**In re RIVER CENTER HOLDINGS, LLC, River Center, LLC, and Rein, LP, Debtors.**

**Blackacre Bridge Capital LLC and SWH Funding Corp., Plaintiffs,**

**v.**

**Joseph Korff, Defendant.**

**Bankruptcy Nos. 01–11004 to 01–11006(REG).**
**Adversary No. 01–8177 (REG).**

United States Bankruptcy Court, S.D. New York.

Jan. 6, 2003.

Schulte Roth & Zabel LLP, New York City, by Michael L. Cook, David M. Hillman, for Plaintiffs Blackacre Bridge Capital LLC and SWH Funding Corp.

Dickstein Shapiro Morin & Oshinsky, LLP, New York City, by Neal S. Barlia, for Defendant Joseph Korff.

Angel & Frankel, P.C., New York City, by Bruce Frankel, for the Debtors.

## DECISION ON REMAND AND ABSTENTION MOTION

ROBERT E. GERBER, Bankruptcy Judge.

This adversary proceeding, a lender's suit on a guaranty of secured debt, was brought by secured creditors and plaintiffs SWH Funding Corp. ("SWH") and Blackacre Bridge Capital, L.L.C. (together, the "Blackacre Lenders") against defendant Joseph Korff, the debtor's president, in state court, and then removed by Mr. Korff to this Court. It lies under the umbrella of the chapter 11 case of debtor River Center Holdings LLC ("River Center," or "the Debtor") (one of three debtors whose cases are jointly administered before this Court), to whom the Blackacre Lenders made a second-lien mortgage loan.

The Blackacre Lenders move to remand the action back to state court, on what are essentially three grounds. Switching their contentions around in order, to best deal with them conceptually, they argue in favor of remand that:

(1) this Court lacks subject matter jurisdiction over its claims against Mr. Korff under the relevant jurisdictional statute, 28 U.S.C. § 1334(b);

(2) this Court should abstain from hearing the Blackacre Lenders' claims, based on the jurisdictional statute's permissive and mandatory abstention provisions, 28 U.S.C. §§ 1334(c)(1) and (c)(2), respectively; and

(3) this Court should remand this adversary proceeding, on equitable grounds, under the equitable remand provision of the relevant removal statute, 28 U.S.C. § 1452(b).

For the reasons that follow, the Court concludes that:

(1) it has subject matter jurisdiction over the action;

(2) it should hold, as have the majority of the courts in this district (and as this Court itself recently did, in an action raising very similar issues),[1] that mandatory abstention is inapplicable in cases, like this one, where a state court action was removed to the bankruptcy court, and there is no other similar state court action currently pending;[2] and

(3) remand on equitable grounds is inappropriate.

Accordingly, the Blackacre Lenders' motion is denied.

### Facts

There are no material disputed issues of fact in connection with the motion. Prior to February 2001, River Center owned real property in Manhattan that it wished to develop. It secured first-lien mortgage financing from one lender, and, as relevant here, second-lien mortgage financing, in the original principal amount of approximately $55 million, from the Blackacre Lenders. In connection with the Blackacre Lenders' financing, Mr. Korff signed an agreement, in his individual capacity, called a "Good Faith Guaranty"[3] (the "Guaranty"), to guaranty the Blackacre Lenders' loan to River Center.[4]

That debt came due on March 1, 2000, and after it was not paid on that date, the Blackacre Lenders restructured their loan, agreeing to an extension of the time for repayment. In May 2000, at the time of the loan restructuring, River Center paid and committed to paying of a variety of forms of consideration (some of which, River Center contends, should be voided as a fraudulent conveyance),[5] and Mr. Korff acknowledged that River Center's indebtedness to the Blackacre Lenders was then $55,247,659 and that there then existed no defenses, deductions, counterclaims or offsets to compliance with the obligations of River Center as borrower, and Mr. Korff as guarantor, of their respective obligations.[6]

1. See generally *ML Media Partners, L.P. v. Century/ML Cable Venture (In re Adelphia Communications Corp.)*, 285 B.R. 127 (Bankr. S.D.N.Y.2002) (Gerber, J.) (*"Adelphia"*), discussed at greater length below.

2. As in *Adelphia*, the Court here has no need to decide whether that analysis applies equally to discretionary abstention, as grounds for that analysis would not materially differ from those considered in connection with equitable remand, which the Court plainly would have the ability, and responsibility, to decide. *See Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, 1995 WL 489711 at *9 (S.D.N.Y. 1995) (Preska, J.) (*"Nemsa"*) (if abstention under § 1334(c)(1) in removed actions, where there is no alternate state court action, does apply, "then I must consider virtually the same factors as I did in connection with the motion to remand pursuant to § 1452(b)"); *In re Riverside Nursing Home*, 144 B.R. 951, 957 (Bankr.S.D.N.Y.1992) (Schwartzberg, J.) ("[t]he equitable grounds that warrant a decision to remand under 28 U.S.C. § 1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c).").

3. (Declaration of Alexander D. Widell Exh. A. at 1) ("Widell Decl.").

4. The Guaranty provided, *inter alia,* that Mr. Korff undertook his obligations "as primary obligor and not merely as surety," *id.,* a matter that is argued to affect the extent, if any, to which he might avail himself of defenses that could be available to the Debtor, discussed below. For the reasons set forth below, the Court does not decide that issue today.

5. The Debtor commenced a separate adversary proceeding against the Blackacre Lenders with respect to these contentions. The extent to which any determination in the Debtor's favor in that adversary proceeding would enure to the benefit of a non-debtor, like Mr. Korff, is hotly debated.

6. (Widell Decl. Exh. A "at First Modification to Good Faith Guaranty and Reaffirmation").

On February 6, 2001, the Dormitory Authority of the State of New York ("DASNY") commenced a condemnation action in New York state court, seeking to take the property for use by John Jay College. Shortly thereafter, on February 27, 2001, River Center filed its chapter 11 case in this Court, and sought and obtained a consensual order granting relief from the stay to permit the state court condemnation action to proceed. The condemnation proceeds would, it was hoped, be sufficient to pay all of the secured debt, and, indeed, leave meaningful amounts for the payment of unsecured creditors and equity. However, Mr. Korff's guaranty provided, among other things, that Mr. Korff's obligation on the guaranty would be triggered if River Center filed a petition under the Bankruptcy Code.[7]

On April 6, 2001, the petition for condemnation was granted by the New York State court, and DASNY took the property on April 11—with, of course, an associated obligation to pay its fair value, in amount that, if not agreed to, would be fixed by the state court. In accordance with New York condemnation law, DASNY made two payments on account of that obligation, totaling approximately $83 million, based on DASNY's position as to the property's value—which (hardly surprisingly) was considerably less than everyone else's.

The amounts so paid were sufficient to satisfy the first-lien debt, and part, but not all, of the Blackacre Lenders' debt, whatever the final amount of that debt might be determined to be.[8] To minimize the burdens on the estate by reason of post-petition interest,[9] this Court authorized the payment to the secured lenders of nearly all of the cash so received, subject to certain reservations of rights. The cash so received paid off substantially all of the debt owing to the first-lien lender,[10] and approximately $48.5 million of the debt to the Blackacre Lenders—leaving approximately $38.3 million (plus, the Court understands, an additional amount representing post-petition accruing interest and costs of collection) that is asserted to be due.

However, apparently not content to await the determination in the condemnation action and their receipt of subsequent payments that might come as a consequence, the Blackacre Lenders determined to proceed against Mr. Korff on his guaranty. The Blackacre Lenders commenced an action in New York County Supreme Court on November 26, 2001, by the filing of a summons with notice of a motion for Summary Judgment in Lieu of Complaint, under N.Y. CPLR 3213. The Blackacre Lenders sought judgment against Mr. Korff in the amount of approximately $38.3

---

7. (Widell Decl. Exh. A at 2).

8. On November 13, 2001, SWH, on behalf of both of the Blackacre Lenders, filed a proof of claim in the amount of approximately $76.2 million, (Widell Decl. Exh. B), said to be composed of (i) the original fully accrued principal amount (approximately $55.2 million); (ii) unpaid Lump Sum Interest (approximately $4.0 million); (iii) unpaid Per Diem Interest (approximately $2.7 million); (iv) accrued but unpaid interest at the basic contract rate (18–1/2%), for a 5–1/2 month period from March 1, 2000 through August 15, 2000, on Items (i), (ii) and (iii) (approximately $5.5 million); and accrued but unpaid interest at

the default rate (23–1/2%), for the period from August 16, 2000 through the February 27, 2001 Petition Date, on Items (i), (ii) and (iii) (approximately $8.6 million).

9. The first-lien lender was plainly oversecured, and based on the joint Debtor/Blackacre view of the property's value, the Blackacre Lenders would be too.

10. The first-lien lender's claim was allowed and paid, except to the extent of $250,000 of the amount it asserted it was owed, from the first DASNY installment.

million.[11] Mr. Korff timely removed the action to this Court, after which the Blackacre Lenders moved to remand.

Also relevant, or arguably relevant, are certain additional facts. In addition to this adversary proceeding, there are two other adversary proceedings in this Court, now consolidated, addressing the nature, extent, validity, priority and value of Blackacre's claim against River Center. On January 3, 2002, the Blackacre Lenders commenced an adversary proceeding in this Court, seeking, among other things, release of a $1.5 million holdback of funds received from DASNY and held in trust by the Debtor's counsel, and declaratory relief as to the validity and amount of their amended claim.[12] On the same day, River Center filed its own adversary proceeding against the Blackacre Lenders,[13] described by Mr. Korff as a "mirror image" adversary proceeding, "seeking, just like Blackacre, a determination of the nature, extent, validity, priority and value of Blackacre's claim."[14] It alleged, *inter alia,* a number of fraudulent conveyance claims.

Without dispute, the action by Blackacre that was removed here was the one and only action pending between the parties in state court; there is no other action in state court currently pending between them.

There are no allegations that any of the Blackacre Lenders' loan proceeds went to Mr. Korff personally. So far as the record reflects, the funds went to the Debtor. While guaranties by insiders of corporate debt are of course common, and actions to enforce such guaranties are common as well (and are not barred by the automatic stay), they frequently trigger rights of in-demnification with respect to any payments made on account of the corporate obligations. That at least seemingly is the case here. Section 3.4.2 of the Operating Agreement provides that River Center

> shall indemnify and defend the Member, the Independent Member and the officers against and hold them harmless for any and all losses, judgments, costs, damages, liabilities, fines, claims, and expenses (including, but not limited to, reasonable attorneys' fees and court costs, which shall be paid by the Company [River Center] as incurred) that may be made or imposed upon such persons and any amounts paid in settlement of any claims sustained by the Company [River Center] by reason of any act or inaction which is determined by the Member, the Independent Member or the officers in good faith to have been in the best interest of the Company [River Center] so long as such conduct shall not constitute wilful misconduct or gross negligence.

(Widell Decl. Ex. F at Section 3.4.2). Thus, the Operating Agreement at least seemingly provides that if Mr. Korff guarantied the Blackacre Lenders' debt in good faith to advance the best interests of the Debtor, and the Blackacre Lenders later succeed on their guaranty claim against Mr. Korff, River Center would have to indemnify Mr. Korff for the resulting judgment. And assuming once more that the prerequisites are satisfied, the Operating Agreement at least seemingly provides that River Center would be obligated to pay for Mr. Korff's attorney's fees in conjunction with litigating the guaranty action.

---

11. (Affidavit of Sanford Herrick in Support of Motion for Summary Judgment in Lieu of Complaint part of Widell Decl. Exh. E ¶ 2) ("Herrick Aff.").

12. (Widell Decl. Exh. C).

13. (Widell Decl. Exh. D).

14. (Korff Memo. in Opp. at 5).

It is true, as the Blackacre Lenders argue, that the portion of any indemnification claim by Mr. Korff against the estate that was based on his payments to the Blackacre Lenders would represent a substitution of one creditor for another. But that is not the entirety of the relevant factual analysis. It is also the case that (particularly if the Court ultimately subscribes to one of the Blackacre Lenders' arguments) [15] Mr. Korff could be liable to the Blackacre Lenders for amounts that they could not recover from River Center. This could include, e.g., the acceptance by this Court of the Blackacre Lenders' contention that even if River Center might be able to avoid, as fraudulent conveyances, certain portions of its debt to Blackacre, Mr. Korff could not. In any event, the portion of any indemnification claim that represented Mr. Korff's legal fees and expenses in defending himself would represent a separate, incremental, claim against the estate which would have an economic effect on the estate and its other creditors.

*Discussion*

*I.*

*A.*

■ As noted above, the Blackacre Lenders contend that this Court lacks subject matter jurisdiction over their claims against Mr. Korff. Section 1334 of the Judicial Code, 28 U.S.C. § 1334, defines the subject matter of the district courts (and hence the bankruptcy courts) with respect to the exercise of their bankruptcy jurisdiction. After providing, in its subsection (a), that the district courts have jurisdiction (and, indeed, exclusive jurisdiction) over *cases* under title 11 (a matter not relevant here), it provides, in relevant part, with respect to *proceedings* (which include, in addition to contested matters in cases, adversary proceedings like this action):

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). The three types of jurisdiction that district (and hence bankruptcy) courts thus may exercise are "arising under" and "arising in" jurisdiction (which the Court regards as species of federal question jurisdiction), and "related to" jurisdiction, which is the argued basis here, and whose presence is in dispute.

The principles underlying "related to" subject matter jurisdiction determinations were discussed at some length in this Court's decision in *Adelphia, see* 285 B.R. at 136–137, and will not be repeated at length here. As Chief Judge Mukasey of the district court noted when considering an earlier "related to" issue under section 1334(b), the Third Circuit has articulated what has become the prevailing definition of "related to" jurisdiction:

> [A] civil proceeding is related to bankruptcy [if] . . . *the outcome of that pro-*

---

**15.** At the conclusion of oral argument, the Court, being then of the view that determining whether Mr. Korff could invoke fraudulent conveyance defenses available to the estate could drive the decision on this motion, asked for supplemental briefing with respect to these issues. The two sides complied with this request. After reading those supplemental submissions, and after further consideration of the matter, the Court now believes that there is a ripeness issue here, and that it would be inappropriate to rule on the extent, if any, to which Mr. Korff could avail himself of such defenses without first determining the extent, if any, to which River Center itself could avoid any part of its debt to the Blackacre Lenders, and on what basis. The Court apologizes to the litigants for the unnecessary work its request occasioned.

ceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Weisman v. Southeast Hotel Props. Ltd. P'ship, 1992 WL 131080, at *3 (S.D.N.Y. 1992) (Mukasey, C.J.) (emphasis in original) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984), and finding subject matter jurisdiction to exist) ("Weisman"); accord Hunnicutt Co. v. TJX Companies, Inc. (In re Ames Department Stores, Inc.), 190 B.R. 157, 160 (S.D.N.Y.1995) (Koeltl, J.) (also finding subject matter jurisdiction to exist) ("Hunnicutt"). This test is often referred to as the "conceivable effects" test, or the "Pacor test." See Adelphia, 285 B.R. at 136–137 (discussing this matter in greater detail).

As noted at greater length in Adelphia, see id. at 137, it now is clear that in the Second Circuit, as elsewhere, the existence of a "conceivable effect" on the bankruptcy now establishes "related to" jurisdiction under Section 1334(b). See Back v. LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633, 638 (S.D.N.Y.1997) (Baer, J.); Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc., 174 B.R. 28, 32 (S.D.N.Y.1994) (McKenna, J.); Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.), 241 B.R. 511, 515 (Bankr. S.D.N.Y.1999) (Bernstein, C.J.) ("Masterwear").

Using the standard set forth, inter alia, in Pacor, Cuyahoga Equipment, Masterwear and, recently, Adelphia, this Court now considers whether the Blackacre

Lenders' suit against Mr. Korff could have the requisite "conceivable effect" on the Debtor and its creditors.

### B.

■ Under that standard, it is plain that the Blackacre Lenders' suit would have the requisite effect. It is at least strongly arguable that River Center would be under an obligation to indemnify Mr. Korff for any liability that Mr. Korff incurs as a result of being its guarantor. "In litigation involving non-debtors, 'relatedness' often turns on the estate's obligation to indemnify the losing party." Masterwear, 241 B.R. at 516. If the obligation of the debtor to indemnify is "contractual and absolute," courts have held that the third party litigation is related to the bankruptcy case. See, e.g., id.; Hunnicutt, 190 B.R. at 160–61. Indeed, even if the obligation is not contractual and absolute, "related to" jurisdiction exists if the disputed or conditional indemnity claim has a "reasonable legal basis." Masterwear Corp., 241 B.R. at 516; see also In re Salem Mortgage Co., 783 F.2d 626, 635 (6th Cir. 1986) ("We also agree with Judge Graves that the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding.").

In this case, there is at least a reasonable legal basis for the conclusion that River Center will have to indemnify Mr. Korff for any payments he makes to the Blackacre Lenders as River Center's guarantor. As noted, Section 3.4.2 of the Operating Agreement provides for such indemnification for losses suffered "by reason of any act or inaction which is determined . . . in good faith to have been in the best interest of the Company [River Center] so long as such conduct shall not constitute

wilful misconduct or gross negligence."[16] Thus, there is at least a reasonable legal basis for the conclusion that if the Blackacre Lenders succeed in their guaranty action, Mr. Korff will have a claim against River Center for indemnification for the resulting judgment, and, whether or not they win, for his attorney's fees in conjunction with litigating the guaranty action.

The Blackacre Lenders argue that the Court lacks subject matter jurisdiction because, even assuming the indemnity claim is valid, Mr. Korff's claim would not affect the River Center estate because he would merely be "substituting" creditors—himself in place of the Blackacre Lenders. As discussed above in connection with the facts, this argument is unpersuasive, as it is only partly true, for failure to consider the indemnification for legal costs—an incremental claim against the estate that would not exist if the Blackacre Lenders had proceeded against the estate alone. And it would be true to an even lesser degree if the Court were ultimately to subscribe to the Blackacre Lenders' contention that Mr. Korff cannot avail himself of defenses that would allegedly be available to the Debtor.[17]

For these reasons, the Blackacre Lenders' assertion of claims against Mr. Korff plainly would have the requisite "conceivable effect" on the River Center estate necessary to confer subject matter jurisdiction.

## II.

■ The Blackacre Lenders also argue that this Court must remand this proceeding under the statutory provisions requiring "mandatory abstention," under 28 U.S.C. § 1334(c)(2).

Section 1334(c)(2) of the Judicial Code, the so-called "mandatory abstention" provision with respect to the district courts' exercise of their bankruptcy jurisdiction, provides that:

> Upon [1] timely motion of a party [2] in a proceeding based upon a State law claim or State law cause of action, [3] related to a case under title 11 but not arising under title 11 or arising in a case under title 11, [4] with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding if [5] an action is commenced, and [6] can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). As noted in this Court's recent decision in *Adelphia, see* 285 B.R. at 140–141, and as the statute's use of the word "shall" indicates, this provision—which is in contrast to the first provision of section 1334(c) authorizing the district court to abstain, in

---

**16.** Further, the common law may give a guarantor a right of contribution in circumstances such as those in the instant case. *See Pro-Specialties, Inc. v. Thomas Funding Corp.*, 812 F.2d 797, 799–800 (2d Cir.1987) ("[W]hen a party agrees to become a guarantor at the behest of the principal obligor, a promise to indemnify—even though not expressly provided for in the contract—is implied by law, *Konitzky v. Meyer*, 49 N.Y. 571, 576 (1872).").

**17.** The Court notes a point made by the Blackacre Lenders (see Blackacre Lenders Reply Br. 4, citing the Guaranty, Widell Exh.

A ¶ 9) that Mr. Korff assigned any claims he might have in River Center's bankruptcy case to the Blackacre Lenders, but that was "to the extent of the obligations guaranteed hereby." (Widell Decl. Exh. A at 5–6). If Mr. Korff answered for River Center's debt to the Blackacre Lenders under the Guaranty, the Court does not understand the Blackacre Lenders to contend that he could not press a claim against the estate (e.g., for indemnification for the payment, for legal fees, or both) in his own name.

its discretion, when such is in the interests of justice or comity [18]—*compels* abstention when the statutory requirements are satisfied.

The critical issue is Requirement # 5 above, that "an action is commenced" in state court.[19] Where, as here (and in many other cases), an action was once commenced in state court but has been removed to the federal court, and there no longer is an action pending in state court, there is dispute as to whether the mandatory abstention requirement applies, and whether remand—which is governed by a separate provision of Judicial Code, 28 U.S.C. § 1452 [20]—is thus required. *See Adelphia*, 285 B.R. at 141.

As also noted in *Adelphia, id.*, the cases are split on this issue, both nationally and in this district, and the Second Circuit has not decided the issue. There are a fair number of cases (the bulk of which are outside this district) generally holding that mandatory abstention, and hence remand, is required even where a case has been removed and there is not a separate state court action for the federal court to abstain "in favor of." [21] However, other cases [22]

---

**18.** Section 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**19.** Requirement # 6, timely adjudication in the state court, would need to be addressed if, but only if, the Court concluded that Requirement # 5 is satisfied. This Court does not need to, and does not, reach that issue.

**20.** That section, captioned "Removal of claims related to bankruptcy cases," provides, in relevant part:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . .

**21.** Those cases, and others holding similarly, include *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir.1999); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir.1990); *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 776 (10th Cir. BAP 1997); *Gassman v. Gassman, Griper & Golodny*, 1997 WL 603439, at *2 (S.D.N.Y. Sept. 30, 1997) (Owen, J); *Channel Bell Assocs. v. W.R. Grace & Co.*, 1992 WL 232085, at *5 (S.D.N.Y. Aug. 31, 1992) (Leisure, J.); *Covanta Onondaga Ltd. v. Onondaga County Res. Recovery Agency*, 281 B.R. 809, 815–816 (N.D.N.Y.2002) (Munson, J.); *Universal Well Servs., Inc. v. Avoca Natural Gas Storage*, 222 B.R. 26, 31 (W.D.N.Y.1998) (Telesca, J.); *Bevilacqua v. Bevilacqua*, 208 B.R. 11, 16 (E.D.N.Y.1997) (Weinstein, J.) *Wheeling–Pittsburgh Corp. v. American Ins. Co.*, 267 B.R. 535, 540 (N.D.W.Va.2001) (Stamp, J.).

**22.** Those cases, and others holding similarly, include *In re Lazar*, 237 F.3d 967, 981–82 (9th Cir.2001); *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 12–13 (S.D.N.Y. 2002) (Scheindlin, J.) *("Renaissance Cosmetics")*; *Arstk, Inc. v. Audre Recognition Sys., Inc.*, 1996 WL 229883, at *4 (S.D.N.Y. May 7, 1996) (Kaplan, J); *Neuman v. Goldberg*, 159 B.R. 681, 687–688 (S.D.N.Y.1993) (Sweet, J.) *("Neuman")*; *Weisman*, 1992 WL 131080 at *5; *In re Ross*, 64 B.R. 829, 834–835 (Bankr. S.D.N.Y.1986) (Beatty, J.); *Centrust Sav. v. Chem. Bank (In re 666 Associates)*, 57 B.R. 8, 12 (Bankr.S.D.N.Y.1985) (Beatty, J.) *("666 Associates")*; *In re Montague Pipeline Technologies Corp.*, 209 B.R. 295, 304 (Bankr.E.D.N.Y. 1997) (Duberstein, C.J.); *In re Duval County Ranch Co.*, 167 B.R. 848, 849 (Bankr.S.D.Tex. 1994) (Schmidt, J.), *implicitly overruled by Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir.1999); *In re Branded Products, Inc.*, 154

(including the great majority of the reported caselaw in the Southern District of New York)[23] have held to the contrary, and ruled that the requirements for mandatory abstention are not satisfied in removed cases where there is no other state court proceeding to which to defer.

In *Adelphia*, for reasons set forth at greater length in that decision, *see* 285 B.R. at 140–144, this Court joined the Southern District of New York majority. This Court concluded, based on both its view that there should be consistency within this judicial district (even when the decisions of other judges in this district are not, strictly speaking, binding), and its independent consideration of the merits, that it should rule in accordance with the views expressed by Judges Mukasey, Sweet, Kaplan, Scheindlin, and Beatty on this issue. With this Court having joined that group in *Adelphia*, *see id.* at 143–144, it is not of a mind to rule otherwise now.

The Court rules here that mandatory abstention is inappropriate here, for the reasons set forth in *Adelphia*.

### III.

The Blackacre Lenders further argue that the Court has the power under 28 U.S.C. § 1452(b) to remand on "any equitable ground," and that even if mandatory abstention (and hence remand) is not required, this Court can and should do so under section 1452(b). The Court agrees that it has the power to do so, but determines, in its discretion, that such is inappropriate here.

■ The removal statute, 28 U.S.C. § 1452(b) provides, in relevant part:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . .

The statute uses the word "may," and matters of this character are within the discretion of the district (and hence bankruptcy) court.

■ Caselaw informs the exercise of the Court's discretion in making determinations of this character. Factors identified as relevant to a determination as to whether to remand on equitable grounds under § 1452(b) are sometimes referred to as the "*Drexel* Factors," named after a decision in which they were articulated, *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co. (In re Drexel Burnham Lambert Group, Inc.)*, 130 B.R. 405, 407 (S.D.N.Y. 1991) (Edelstein, J.), include:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntary removed defendants.

---

B.R. 936, 939 (Bankr.W.D.Tex.1993) (Clark, J.), *expressly overruled by Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir.1999); *In re Fairchild Aircraft Corp.*, 1990 WL 119650, *1–*2 (Bankr.W.D.Tex. June 18, 1990) (Clark, J.), *implicitly overruled by Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir.1999); *In re Micro Mart, Inc.*, 72 B.R. 63, 64 (Bankr.N.D.Ga. 1987) (Kahn, J.); *cf. In re Pacor, Inc.*, 72 B.R.

927, 931 (Bankr.E.D.Pa.) (Fox, C.J.), *aff'd*, 86 B.R. 808 (E.D.Pa.1987) (Giles, J.).

**23.** *See Renaissance Cosmetics*, 277 B.R. at 12–13; *Arstk*, 1996 WL 229883 at *4; *Neuman*, 159 B.R. at 687–688; *Weisman*, 1992 WL 131080 at *5; *Ross*, 64 B.R. at 834–835; *666 Associates*, 57 B.R. at 12; *Adelphia*, 285 B.R. at 143–144. *Contra Channel Bell*, 1992 WL 232085, at *5; *Gassman*, 1997 WL 603439, at *2.

*Renaissance Cosmetics,* 277 B.R. at 14. *See also Arstk,* 1996 WL 229883 at *5; *In re Riverside Nursing Home,* 144 B.R. 951, 956 (S.D.N.Y.1992) (Broderick, U.S.D.J. adopting recommendation of Schwartzberg, U.S.B.J.).

While the litigants here do not differ with respect to the applicable factors to be considered, they differ substantially with respect to the factors' application. As in *Adelphia,* where a request for equitable remand similarly was made (and denied), the Court subscribes to neither of the combatants' views of the world, and simply sets forth its own view of the *Drexel* Factors' application to the facts of this proceeding.

### (1) Efficient Administration of the Estate

This factor, which the Court regards as one of the most important, dictates keeping this action here. Though it is not clear that Mr. Korff will be successful in this regard, and this Court intentionally makes no judgment as to his likelihood of success, he will wish to argue that he should share in any success by River Center in the two pending adversary proceedings with respect to the amount of the debt owed to the Blackacre Lenders. There are at least arguably common issues that would affect both. It would likely be contrary to law, and unjust, to apply doctrines of res judicata or collateral estoppel against either River Center or Mr. Korff based on determinations in proceedings in which they were not parties, yet there would be exactly this risk if the actions were proceeding in different courts. The issues are, as Judge Preska found in *Nemsa,* "inextricably intertwined," *see* 1995 WL 489711 at *8, and that strongly counsels against separating the litigation as to the intertwined issues. There is no good reason, in this Court's view, to decide identical or nearly identical issues in two separate courts.[24]

Additionally, as previously noted, the outcome of this adversary proceeding could at least reasonably be expected to give Mr. Korff an indemnity claim against the estate. Furthermore, a central issue in the related two adversary proceedings, and/or the claims process in the underlying chapter 11 case, will be determining the nature, extent, validity, priority, and value of the Blackacre Lenders' claim against River Center. Whether, and/or to what extent, these matters would be determinative of the amount of the Blackacre Lenders' claim against Mr. Korff is debatable, but it plainly would be in the interests of judicial efficiency and economy to place all of such determinations under one tent.

### (2) Extent to Which Issues of State Law Predominate

This factor weighs in favor of remand, but it does not overwhelmingly do so. The Court believes that issues of state law do indeed predominate with respect to a suit

---

**24.** The Blackacre Lenders argue in their reply that Mr. Korff should not be heard to make these points, because he waived them when he acknowledged and agreed in the Guaranty that he had "no defenses, counterclaims or offsets to any of [his] obligations under the Guaranty or any other Loan Documents nor any claims against the [Blackacre Lenders] of any nature whatsoever." Blackacre Lenders Reply Br. at 8 (quoting Widell Decl. Exh. A at "First Modification to Good Faith Guaranty and Reaffirmation" ¶ 7). Mr. Korff responds that his position is merely with respect to the determination of the amount owed, and does not fall within this acknowledgement. As with the other points with respect to Mr. Korff's defenses, the Court considers it premature to decide that issue now. While Blackacre may ultimately turn out to be right, the matter is hardly so free from doubt that this Court should assume the conclusion later to be determined, and disregard the obvious benefits of coordinated consideration of these matters if the issues do not go away.

on a contractual guaranty like the dispute here (though this conclusion is tempered by Korff's desire to interpose federal defenses), but even assuming the predominance of the state law issues, the Court regards this factor as only modestly tilting in the Blackacre Lenders' favor. As this Court noted in *Adelphia, see* 285 B.R. at 145, the bankruptcy judges in this district, and the district judges here, address matters of state law on a regular basis, and as Justice White noted in his dissent in *Marathon* (in comments with which neither the *Marathon* plurality nor the justices concurring with the result differed), "the bankruptcy judge is constantly enmeshed in state-law issues." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 97, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (White, J., dissenting). As Judge Sweet noted in *Neuman:*

> The fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex. . . .

159 B.R. at 688.

### (3) Difficulty or Unsettled Nature of Applicable State Law

To the extent issues in this adversary proceeding are novel or complex, they involve the extent, if any, to which a guarantor may raise fraudulent conveyance defenses available to a bankruptcy debtor. That likely will require the consideration of both state and federal law. This Court does not believe that a state court would have any particular advantage over a federal bankruptcy court in making decisions of that character, and indeed feels that, if anything, the converse might be true.

To the extent this action involves state law issues, they are neither novel nor complex. *See Renaissance Cosmetics,* 277 B.R. at 16 ("[L]ack of complexity [of the state law claims] 'significantly undercuts

the degree to which the state law factor weighs in favor of remand to [the] New York courts.' ") (quoting *Nemsa* at *7) (alteration in original). Thus, this factor weighs against remand, or at least does not weigh in favor of remand in any material way.

### (4) Comity

As this Court noted in *Adelphia,* comity "focuses on the state's interest in developing its law and applying its law to its citizens." 285 B.R. at 146 (citing *Renaissance Cosmetics,* 277 B.R. at 16). It is undisputed that New York law would apply to the Blackacre Lenders' claims, and state law and (to the extent applicable) federal law would apply to Mr. Korff's defenses, if any. As in *Adelphia,* this case should be contrasted with situations where New York law must be applied by reason of a strong state or local interest in regulating the matter in controversy—as it might, for example, in connection with landlord-tenant matters in the City or State of New York. This matter involves no matters of New York public policy, and hardly involves the New York public interest. The Court does not find comity to be a material factor.

### (5) Degree of Relatedness or Remoteness to Main Bankruptcy Case

With respect to this factor, which the Court regards as one of the more significant ones under the facts of this case, the Court finds that this proceeding is not merely remotely related to the bankruptcy proceeding. As previously discussed, the outcome of this adversary proceeding may have an effect on the liabilities of River Center's estate, by reason of indemnity claims Mr. Korff could assert as a consequence of this guaranty action.

Additionally, the principal determinant of this estate's ability to reorganize—and its ability to pay the Blackacre Lenders on account of their secured claim—will be its

recovery in the condemnation proceeding. The principal determinant of any ultimate loss on the part of the Blackacre Lenders, for which they would have an understandable desire to proceed against Mr. Korff, will be their recovery in this chapter 11 case. While the Blackacre Lenders may wish, for tactical reasons, to have a $38 million judgment hanging over Mr. Korff's head now, the relationship between the distribution the Blackacre Lenders would get in the underlying bankruptcy case, and their claims against Mr. Korff in this adversary proceeding, is obvious.[25]

Likewise, any payout the Blackacre Lenders might secure from Mr. Korff would have a domino effect on other creditors. In *In re Brentano's, Inc.*, 27 B.R. 90, 92 (Bankr.S.D.N.Y.1983), Judge Galgay used his section 105 power to stay an action against a guarantor of lease obligations, Macmillan, which, as here, would have indemnification claims against the estate, when those claims would be the largest in the *Brentano's* case. If Mr. Korff has to pay out on his guaranty, the same could be said here. Judge Galgay noted in *Brentano's* that "[m]ultiple and haphazard state court litigations will delay and deter ultimate resolution of the bankruptcy case," *id.* at 92, and, without being critical of the state courts, he continued:

> This Court has an overall view of the Brentano's case and all aspects of that case should be before this Court, particularly actions that may determine whether reorganization efforts succeed.

*Id.*

Factors that caused Judge Galgay to use his section 105 power in *Brentano's* cause this Court to believe, that here, as there, the Court should consider the interrelationship between the suit on the guaranty and the proceedings in the two adversary proceedings and the umbrella chapter 11 case; take advantage of the "overall view;" and maintain control. This Court believes, as did Judge Galgay, that "all aspects of [this] case should be before this Court." *Id.*

This factor, in this Court's view, strongly weighs against remand.

### (6) Existence of Right to Jury Trial

Here the "jury trial" factor does not weigh in favor of remand because both parties waived their rights to a jury trial.[26] Thus, even if this Court were to remand the action to state court, a jury trial would not be available to the parties. Hence, no party could lose its right to a jury trial by having the dispute adjudicated in this Court.

### (7) Prejudice to Involuntarily Removed Defendants

This factor is inapplicable here, and most assuredly does not favor remand. The one and only defendant, Mr. Korff, removed the action, and prefers this Court; he was not involuntarily removed.

\* \* \*

Consequently, although certain factors favor remand, equitable remand is on balance inappropriate here.

### Conclusion

For the foregoing reasons, remand is denied.

SO ORDERED.

---

**25.** In this connection, the Court notes the obvious. By keeping this case, this Court hardly wishes to convey the message that Mr. Korff will thereby be absolved from liability under his guaranty, or that he will prevail on any of the arguments he may raise, some of which might well be regarded as aggressive.

**26.** (*See* Widell Decl. Exh. A ¶ 14).