**In re BRADLEES STORES, INC., et al., Debtors.**

**Nos. 00–16033(BRL), 00–16035(BRL), 00–16036(BRL).**

United States Bankruptcy Court, S.D. New York.

June 9, 2004.

Sullivan & Cromwell LLP, by Robinson B. Lacy, Esq., William L. Farris, Esq.,

---

Michael A. Cheah, Esq., White & Case LLP, New York, NY, for Vornado Realty Trust.

Glenn M. Kurtz, Esq., Daniel P. Goldberg, Esq., New York, NY, for the Stop & Shop Supermarket Company.

## MEMORANDUM DECISION GRANTING MOTION TO ABSTAIN

BURTON R. LIFLAND, Bankruptcy Judge.

Vornado Realty Trust ("Vornado"), moves for an interpretation (the "Interpretation Motion") of this court's order dated February 6, 2001 (the "Sale Order"), as modified by the District Court's order dated February 13, 2001 (the "District Court Order"). The Stop & Shop Supermarket Company ("Stop & Shop") opposes the Interpretation Motion and cross-moves for abstention arguing that the underlying dispute is between non-debtors and concerns a state law issue of contract construction.

### Background

Bradlees Stores Inc. and its affiliated entities (collectively, "Bradlees" or the "Debtors"), filed petitions under chapter 11 of title 11, United States Code (the "Bankruptcy Code") on December 26, 2000. Prior to the chapter 11 proceedings, Bradlees operated 105 discount department stores throughout the Northeast. On January 4, 2001, this Court entered an order authorizing the Debtors to liquidate their entire inventory by conducting "going-out-of-business" sales (the "GOB Sales"). By February 5, 2001, the GOB Sales at all of the Debtors' stores had concluded and the stores were closed.

Prior to July 1992, Stop & Shop's parent company owned Bradlees' predecessors. In July 1992, Stop & Shop sold Bradlees' predecessors, and in connection therewith, its affiliates assigned to Bradlees nineteen leases under which they leased retail locations from Vornado (the "Vornado Leases"). Vornado gave its consent pursuant to the Master Agreement and Guaranty dated May 1, 1992 (the "Master Agreement") among the predecessors and affiliates of Bradlees, Stop & Shop and Vornado. In the Master Agreement, Bradlees agreed to pay Vornado a "consent fee" in the form of a rental increase (the "Rental Increase") on certain leases as designated by Vornado and Stop & Shop agreed to guaranty such payment. The Master Agreement set forth the Rental Increases over time in the following annual amounts over and above the aggregate rent called for under the Vornado Leases:

$1.5 million from May 1, 1992 through January 31, 1994;

$1.8 million from February 1, 1994 through January 31, 1996;

$4 million from February 1, 1996 through January 31, 2002;

$5 million from February 1, 2002 through January 31, 2012; and if certain renewal options were exercised,

$6 million from February 1, 2012 through expiration of the Vornado Leases.

On February 6, 2001, this Court entered an order (the "Sale Order"), approving that certain Lease Designation and Disposition Agreement, dated January 11, 2001, between the Debtors, as sellers, and S & S/B Lease Disposition LLC, as purchaser ("S & S/B"), for the sale of the Debtors' designation right to assign their interests in all or substantially all of their 105 non-residential real property leases to third party end-users (the "Stop & Shop Agreement"). In connection therewith, this Court approved a procedure, as provided for in the Stop & Shop Agreement, for the actual assignment of the Debtors' leasehold interests to third party end-user

assignees. On February 13, 2001, the Debtors and S & S/B consummated the transactions under the Stop & Shop Agreement.

At the time of the Sale Order, there were fifteen unexpired Vornado Leases which, unless extended, were set to expire between 2002 and 2013. The extension options granted under the Vornado Leases permitted the tenant to extend the terms of certain of the leases for periods extending, in one case, to 2031. Thus, pursuant to the Master Agreement, Vornado was entitled to collect a Rental Increase of $5 million and then $6 million per year until 2013, and potentially until 2031. Section 1 of the Master Agreement includes a provision (the "Allocation Provision") stating that Vornado may reallocate the Rental Increase among the Vornado Leases. Thus, the Allocation Provision conceivably allowed the Rental Increase to be payable as rent for as long as any of the Vornado Leases remained in effect. If one of the Leases to which part of the Rental Increase had been allocated expired, Vornado could reallocate that part of the Rental Increase to another Lease. Indeed, Vornado did allocate the Rental Increase, choosing five of the most valuable of the seventeen leases.

As part of the Approval Motion, the Debtors sought to invalidate the Allocation Provision as an anti-assignment clause prohibited by section 365 of the Bankruptcy Code, and to have the right to reallocate the Rental Increases transferred from Vornado to the Debtors and Stop & Shop. Vornado objected to the Approval Motion, and specifically to the request that the Debtors and Stop & Shop obtain the right to reallocate the Rental Increases. Vornado argued that the Rental Increases should be frozen, remaining with the Vornado Leases to which such Rental Increases were then currently allocated (the "Allocated Leases"). *See* Transcript of Hearing dated January 30, 2001 at pp. 156–57.

Pursuant to the Sale Order, this Court, over Vornado's objection, approved the Lease Designation Agreement, struck the Allocation Provision as an unenforceable anti-assignment clause, and provided to the Debtors and Stop & Shop the right to reallocate the Rental Increases among the Vornado Leases. Vornado appealed to the District Court. Judge McKenna affirmed the Sale Order, with the exception of the transfer of the allocation right to the Debtors and Stop & Shop, finding that this court had the power to invalidate the Allocation Provision because "the practical effect of [such provision] would not only limit the Debtor's ability to realize the intrinsic value of the relevant leases, but would do so relatively severely and that would frustrate the Congressional policy of assisting the Debtor in realizing the equity in all of its assets." (*See* District Court Order at 4). Judge McKenna, however, modified the Sale Order, providing that "the present allocation of the rent increases will remain in place, will be frozen, as Vornado requested of Judge Lifland at the January 30, 2001 hearing and again of this court yesterday, without any right on the part of the debtor and/or Stop & Shop to reallocate." [1] *See* District Court Order at 5, 6.

---

1. At the hearing, Judge McKenna expressly questioned Vornado's counsel about losing the Rental Increases if they were frozen on leases that were soon to expire by their terms. Vornado's counsel acknowledged this risk but stated that he thought the Debtors would extend the Leases because "these are the most attractive properties." Vornado's counsel continued, explaining to the court that

> Bradlees says these are great properties, but with the rental increase the rent is just about market rent so [they] are not going to get any premium for selling them. [The Debtors] want the right to reallocate so [they] can take the rental increase off and

During the course of the District Court's ruling, Vornado sought a clarification regarding the step-ups in the gross amount of the Rental Increases that was supposed to occur the following year and in 2012. Vornado's counsel proposed that "[o]ne possible way of allocating that is to say it is allocated pro rata along with the existing allocation...." *See* District Court Order at 7. The District Court responded

> That is exactly what I intended, that it is allocated pro rata on to the leases to which they are presently in effect ... when I say they are frozen, I mean the new increases go in pro rata on the same leases to which the current rent increases are allocated, which I understood to be what you were asking of Judge Lifland and me.

*See* District Court Order at 7, 8.

Notwithstanding the fact that the Allocated Leases were the Debtors' "most attractive properties"[2] the Debtors and Stop & Shop were unable to sell them because they were burdened with the Rental Increases. Although each of the five Allocated Leases contained options to extend for an additional ten years, four expired on November 30, 2002, and the fifth expired on August 31, 2003.[3] Accordingly, Vornado has recaptured all of the Allocated Leases.[4]

Despite the frozen allocation holding of the District Court, about the time of the expiration of four of the Allocated Leases, Vornado sent a letter to Stop & Shop, dated November 25, 2002, purporting to "reallocate" the Rental Increases from the Allocated Leases to four different Vornado Leases (the "Reallocated Leases"). Vornado sought payment of the reallocated Rental Increases only from Stop & Shop, not from the tenants of those properties.[5]

Stop & Shop sued Vornado in the United States District Court for the District of New Jersey seeking a declaration as to the parties' respective rights and obligations under the Master Agreement. Vornado moved to dismiss the action, arguing there was no subject matter jurisdiction. Based on representations Vornado made about the citizenship of certain limited partners of an affiliated defendant, Stop & Shop voluntarily withdrew the action, and the court dismissed the case without prejudice. Thereafter, Stop & Shop re-filed the identical suit (the "New York Action"), in the Supreme Court of the State of New York (the "State Court"). Vornado removed the New York Action to the District Court for

---

make a lot of money selling the properties. So we estimate that they are market rents that a tenant would extend, but we have no assurance of that.
*See* District Court Transcript at 46, 47.

2. *See* Cheah Decl. Ex. H District Court Transcript at 46.

3. As noted at the hearing before the District Court, Vorando had "no assurance" that the terms of the Allocated Leases would be extended but surmised that they would. *See* District Court Transcript at 46, 47. Vornado estimated incorrectly, leaving no Lease carrying the allocated Rental Increase after the Allocated Lease terms expired.

4. At the Hearing on the Approval Motion, Vornado argued that even if Stop & Shop agreed that Vornado could continue to reallocate the Rental Increase for purposes of billing Stop & Shop, Vornado was entitled to more than the credit of Stop & Shop. Vornado argued that it was "entitled to collect this money protected by the leases themselves" ... "because if the tenant doesn't pay, [Vornado] gets back the leasehold. That is the valuable interest." *See* Transcript of Hearing dated January 30, 2001 p. 118. Vornado has recovered the "valuable interest" because the Leases have expired pursuant to their terms.

5. Apparently, at least two of the Reallocated Leases were leases that had been rejected during the pendancy of the Debtors' bankruptcy cases.

the Southern District of New York (the "District Court"). Vornado designated the removed action as a "related case" before Judge McKenna. Judge McKenna concluded that the removed action was not a related matter and it was reassigned to Judge Baer. Stop & Shop moved before Judge Baer to remand the New York Action to the State Court and Vornado responded with a motion for summary judgment.

On April 11, 2003, Vornado filed its Interpretation Motion in this court and moved to withdraw the reference on the Interpretation Motion (the "Withdrawal Motion") to the District Court on the same day, claiming that the matter "presents no bankruptcy court questions." The Debtors filed a "limited response" to the Interpretation and Withdrawal Motions stating that they did not oppose the Motions based upon Vornado's representations that it seeks no relief from or against the Debtors. Stop & Shop consented to the Withdrawal Motion. However, by letter dated June 25, 2003, Judge Baer opined that the hearing on the Interpretation Motion should go forward in this court prior to his hearing the motion to remand and the motion for summary judgment in the New York Action.[6] At oral argument before this court on July 24, 2003, the parties agreed to mediate the dispute and a mediator was appointed. Almost a year has passed and despite the efforts of the mediator, the parties ultimately failed to reach an agreement.

**Discussion**

This dispute is between two nondebtors, the outcome of which will have no effect on the Debtors' estates. In fact, the Debtors'

liquidating plan went effective and distributions were commenced on December 28, 2001. The Debtors' resolved all of the issues and claims filed against them. On April 6, 2004, an application for a final decree was granted and the Debtors' cases were closed. *See* Debtors' (I) Periodic Status Report for the Period of January 1, 2004 Through April 6, 2004, Pursuant to Post Confirmation Order and Notice. (ECF Docket # 1594); Order of Final Decree dated April 6, 2004 (ECF Docket # 1593).

Vornado itself concedes that "because Vornado's dispute with Stop & Shop concerns two nondebtor parties, the rights and obligations of the Debtors will not be affected." (*See* Withdrawal Motion at ¶ 10). Vornado also concedes that the dispute between itself and Stop & Shop "presents no bankruptcy law questions" other than the extent to which the Order implicates certain provisions of the Bankruptcy Code. (Kurtz Decl. Ex. 3 Motion to Withdraw Reference ¶ 10). Moreover, the portion of the dispute presently before this court is basically a request for an advisory opinion and a ruling on the Interpretation Motion from this court will not resolve the dispute between the parties. The proper procedure to resolve this dispute, a full-blown plenary proceeding, already exists. The New York Action seeks a declaratory judgment pursuant to New York CPLR 3001 that based upon the Master Agreement and the District Court Order and the fact that there are no longer tenants serving as primary obligors, Stop & Shop is no longer obligated as a guarantor. This is clearly a dispute that can be resolved by the state court should the District Court

---

**6.** This court concurs with the District Court's observance that "what has happened here to date is either a waste of an unbelievable number of trees or a relatively simple issue that has been made far more complicated than necessary and ought not proliferate further." See Letter from Hon. Harold Baer, Jr. dated June 25, 2003.

decide to remand it.[7]

Section 1334(c) of title 28, United States Code ("Title 28") commands the federal court to abstain from hearing certain suits related to bankruptcy proceedings, and section 1452(b) of title 28 provides for the remand of such cases if removed to federal court. *In re Cathedral of the Incarnation in Diocese of Long Island,* 99 F.3d 66, 69 (2d Cir.1996). The factors that courts consider when deciding whether to abstain pursuant to section 1334(c) are virtually the same as those considered in connection with a motion to remand pursuant to section 1452(b). *See Renaissance Cosmetics, Inc. v. Development Specialists Inc.,* 277 B.R. 5, 17–18 (S.D.N.Y.2002). *See also Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,* 1995 WL 489711 at *9 (S.D.N.Y.1995) (Preska, J.) (*"Nemsa"*) (if abstention under § 1334(c)(1) in removed actions, ... does apply, "then I must consider virtually the same factors as I did in connection with the motion to remand pursuant to § 1452(b)"); *In re Riverside Nursing Home,* 144 B.R. 951, 957 (S.D.N.Y.1992) ("[t]he equitable grounds that warrant a decision to remand under 28 U.S.C. § 1452(b) are similar to the factors that authorize abstention under 28 U.S.C. § 1334(c).").

In seeking mandatory abstention, a party must show that (1) the abstention motion was timely brought, (2) the action is based upon a state law claim, (3) the action is "related to" a bankruptcy proceeding, as opposed to "arising under" the Bankruptcy Code or "arising in" a case under the Bankruptcy Code, (4) the sole federal jurisdiction for the action is federal bankruptcy jurisdiction, (5) there is an action "commenced" in state court, and (6) the action is capable of being timely adjudicated in state court. 28 U.S.C.A. § 1334(c)(2).

Here, there is no argument that the abstention motion was timely brought and that the jurisdiction of the removed Action is based on federal bankruptcy jurisdiction. The New York Action was commenced in state court and this court can abstain from hearing the Interpretation Motion based on the existence of that action and the pending request for remand of that Action. *See Technology Outsource Solutions, LLC v. ENI Technology, Inc.,* 2003 WL 252141 (W.D.N.Y. Jan.23, 2003) (and cases cited therein).[8] Although the

---

7. Vornado itself argues that the Interpretation Motion is related to and should be consolidated with the New York Action and heard by the same court. (*See* Defendant's Memorandum in Opposition to Stop & Shop's Motion to Remand and for Abstention, dated June 2, 2003).

8. There is a dispute among federal courts over whether the mandatory abstention provision applies in the context of removal and remand. Three of the four circuit Courts of Appeal to have addressed the issue have found that mandatory abstention can apply to removed actions. *Compare Christo v. Padgett,* 223 F.3d 1324, 1331–32 (11th Cir.2000) (abstention may apply to removed action); *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 929 (5th Cir.1999) ("we note, only to reject out of hand, Coopers' assertion that statutory ab-

stention does not apply to cases removed to federal court on the basis of bankruptcy jurisdiction. 28 U.S.C. § 1452. There is no textual support in the statute for this position, only a handful of bankruptcy court opinions support it, and the vast majority of courts hold otherwise"); *Robinson v. Mich. Consol. Gas Co. Inc.,* 918 F.2d 579, 584 n. 3 (6th Cir.1990) (abstention may apply to removed action); *with Schulman v. California (In re Lazar),* 237 F.3d 967, 981–82 (9th Cir.2001) (abstention requires parallel state court proceeding and does not apply to removed action). As noted by one court, the Court of Appeals for the Second Circuit has not directly addressed the issue and is not likely to do so because the Court of Appeals recently held that a district court's decision not to abstain under § 1334(c)(2) is not reviewable. *See Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,* 2004 WL 224505 (S.D.N.Y.

Interpretation Motion seeks a "clarification" of the Order as modified, the dispute between the parties concerns the rights and obligations under a contract governed by state law and the obligations of a guarantor under that contract and state law. Moreover, the dispute between the parties is non-core and at best, tangentially related to the Bradlees chapter 11 case. *See Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2d Cir.1983) *citing* 1 Collier on Bankruptcy, 3.01[1][e] (15th ed.1983) at 3–49 (where a "controversy is so tangentially related to the case" the criterion to consider is "whether the outcome of the proceeding could conceivably have any effect upon the estate being administered."). The outcome of this dispute will have absolutely no effect on the Bradlees' chapter 11 cases. Lastly, this court finds no reason why this dispute cannot be timely adjudicated by the State Court.

Even if mandatory abstention were not required, I would nonetheless find that

Feb. 05, 2004) *citing Beightol v. UBS Painewebber, Inc.*, 354 F.3d 187, 2004 WL 27715, at \*2 (2d Cir.Jan.6, 2004) (citing 28 U.S.C. § 1334(d)), *dismissing appeal from In re Global Crossings, Ltd. Sec. Litig.*, No. 02 Civ. 1186, 2003 WL 21507466, at \*2 & n. 1 (S.D.N.Y. Jun. 30, 2003) (recognizing that the Second Circuit Court of Appeals had not resolved issue of whether mandatory abstention applies in removal context, but not reaching issue because action could not be timely adjudicated in state court and abstention was inappropriate for that reason).

The lower courts in this circuit are also split on the issue. *Compare Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 12–13 (S.D.N.Y.2002)(mandatory abstention does not apply to removed actions); *In re River Center Holdings, LLC*, 288 B.R. 59, 63–65 (Bankr.S.D.N.Y.2003) (and cases cited therein); *with Technology Outsource Solutions, LLC, supra; Universal Well Servs., Inc. v. Avoca Natural Gas Storage*, 222 B.R. 26, 31 (W.D.N.Y.1998) (and cases cited therein); *Gassman v. Gassman, Griper & Golodny*, 1997 WL 603439, at \*2 (S.D.N.Y. Sept.30, 1997); *Channel Bell Associates v. W.R. Grace & Co.*,

discretionary abstention under section 1334(c)(1) of Title 28 would be appropriate in this case.[9] As the Court noted in *Drexel Burnham Lambert Group v. Vigilant Ins.*, 130 B.R. 405, 407 (S.D.N.Y.1991), "[w]hile this action is sufficiently related to [the debtor's] bankruptcy cases for jurisdictional purposes under § 1334(b), it is not sufficiently related to warrant retention of federal jurisdiction over the state law claims it presents."

Here, the parties are non-debtors, Vornado's claims are based primarily on state law, the Motion and the New York Action are only remotely, if at all, related to the bankruptcy proceedings, and federal retention of the cases would not aid in the administration of the bankruptcy estate of *a case that is closed.* Accordingly, I find that discretionary abstention is appropriate "in the interests of justice" under section 1334(c)(1) of Title 28. However, the

1992 WL 232085, at \*7–8 (S.D.N.Y. August 31, 1992). *See also Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*, 318 F.3d 392, 398–99 (2d Cir.2003). *citing Universal Well Services, Inc. v. Avoca Natural Gas Storage, JMC*, 222 B.R. 26, 31 (W.D.N.Y. 1998) (remanding under section 1452(b) after abstaining under subsection 1334(c)(2)). However, discretionary abstention is applicable regardless of whether the action remains pending in state court. *In re Adelphia Communications Corp. Securities and Derivative Litigation*, 2003 WL 23018802, \*2 (S.D.N.Y. Dec. 23, 2003) (Since the rule that mandatory abstention under 28 U.S.C. § 1334(c)(2) is unavailable in removed cases appears to turn on the specific language of that subsection, this Court concludes that the rule is limited to mandatory abstention, and does not apply to discretionary abstention.)

9. Section 1334(c)(1) provides that [n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

determination as to remand remains in the District Court.

**Conclusion**

For all of the reasons set forth above, Vornado's Interpretation Motion is declined. Stop & Shop's cross-motion to abstain is granted.

IT IS SO ORDERED.