In re NATIONAL CENTURY FINANCIAL ENTERPRISES, INC., INVESTMENT LITIGATION.

Rebecca S. Parrett, Plaintiff,

v.

Bank One, N.A., et al., Defendants.

City of Chandler, et al., Plaintiffs,

v.

Bank One, N.A., et al., Defendants.

State of Arizona, et al., Plaintiffs,

v.

Credit Suisse First Boston Corp., et al., Defendants.

Crown Cork & Seal Company, Inc., et al., Plaintiffs,

v.

Credit Suisse First Boston Corp., et al., Defendants.

Nos. 2:03md–1565, 03–CV–541, 03–CV–1220, 03–CV–1618, 03–CV–2084.

United States District Court, S.D. Ohio, Eastern Division.

June 10, 2004.

Acci/Allcare of Pennsylvanie, nia, Calabasas, CA, Pro se.

Joseph C Wasch, Ft. Lauderdale, FL, for Biosource Corporation.

Bobby R. Burchfield, Covington & Burling, Washington, DC, for Banc One Capital Markets Inc.

### OPINION AND ORDER

GRAHAM, Chief Judge.

This matter is before the Court on the Arizona Plaintiffs' motions for remand or abstention. The motions concern four cases originally filed in the Superior Court of Maricopa County, Arizona. *Rebecca S. Parrett v. Bank One, N.A., et al.,* Case No. 03–CV–541 (D.Ariz.); *City of Chandler, et al. v. Bank One, N.A., et al.,* Case No. 03–CV–1220 (D.Ariz.); *State of Arizona ex rel. David A. Peterson, et al. v. Credit Suisse First Boston, et al.,* Case No. 03–CV–1618 (D.Ariz.); and *Crown Cork & Seal Co., Inc. Master Retirement Trust, et al. v. Credit Suisse First Boston Corp., et al.,* Case No. 03–CV–2084 (D.Ariz.). Certain defendants removed the cases to federal court under 28 U.S.C. § 1452(a), alleging that the cases are "related to" the bankruptcy of National Century Financial Enterprises, Inc. The Judicial Panel on Multidistrict Litigation then transferred the Arizona cases to this Court for consolidated pretrial proceedings with other cases "connected in one way or another to the financial collapse" of National Century.

The Arizona Plaintiffs argue for remand or abstention for the following reasons: (1) the Court lacks subject-matter jurisdiction because the Arizona actions are not "related to" the National Century bankruptcy case; (2) the removals were procedurally defective because defendants did not unanimously consent; (3) the Court must abstain under the mandatory abstention rule of 28 U.S.C. § 1334(c)(2); and (4) the Court should either permissively abstain under § 1334(c)(1) or grant equitable remand under § 1452(b).

For the reasons set forth below, the motions for remand or abstention are DENIED.

## I. BACKGROUND

National Century Financial Enterprises, an Ohio company founded in 1991, financed healthcare providers nationwide and became the industry's largest financing company. To raise funds, National Century issued notes backed by the purchase of healthcare accounts receivable. National Century would take the proceeds from selling notes and purchase the accounts receivable of healthcare providers at a discount. Under the sales agreements, National Century was supposed to purchase "eligible receivables," i.e., those receivables meeting certain criteria that indicated they likely would be paid off. But National Century allegedly used the noteholders' money to purchase worthless or non-existent receivables from health care companies which National Century controlled or had some financial interest in. These companies became overfunded because they allegedly received substantial sums of money while exchanging nothing of value in return. And National Century insiders allegedly used these companies as "piggy banks" for their personal pleasure. Further, National Century allegedly wired funds back and forth between its financing programs—notably NPF VI, Inc. and NPF XII, Inc.—in order to hide serious shortfalls in the programs' reserve requirements.

In the midst of reports and allegations of wrongdoing, National Century filed for Chapter 11 bankruptcy on November 18, 2002 in the United States Bankruptcy Court for the Southern District of Ohio. National Century's demise prompted investors to file numerous civil actions against various players in National Century's alleged fraud. Four such actions were filed in Arizona state court in 2003. Three of the cases—City of Chandler, State of Arizona, and Crown Cork & Seal—are closely related. Plaintiffs in these three cases are investors, including numerous state and local governmental entities, who held $1.6 billion in notes issued by NPF VI and NPF XII. They refer to themselves as the "Arizona Noteholder Plaintiffs." The named defendants include: Lance Poulsen, Donald Ayers, and Rebecca Parrett (former National Century principals and directors); Thomas Mendell, Harold Pote, and Eric Wilkinson (former National Century directors); Bank One and J.P. Morgan Chase Bank (indenture trustees of NPF VI and NPF XII); Pricewaterhouse-Coopers and Deloitte & Touche (National Century's accounting firms); and Purcell & Scott (National Century's legal counsel). Defendants allegedly participated in one way or another in National Century's scheme to defraud investors by selling them worthless notes. The complaints assert state law claims for fraud, breach of contract, breach of fiduciary duty, negligence, misrepresentation, and securities fraud under state blue-sky laws. The complaints do not assert any federal causes of action.

The fourth Arizona case, Rebecca S. Parrett v. Bank One N.A., is brought by Rebecca Parrett, a defendant in the other three Arizona cases. Parrett disclaims any involvement in National Century's al-

leged wrongdoing and contends that she, as an owner of 18% of National Century's stock, suffered great loss when National Century collapsed. The complaint names substantially the same defendants as were named in the Arizona Noteholder cases. Parrett asserts state law claims for fraud, breach of fiduciary duty, professional negligence, tortious interference, and unfair business practices.

All four of the Arizona actions were removed to federal court on the grounds that they are "related to" the National Century bankruptcy proceedings. The Bank One Defendants [1] filed the removal papers in *City of Chandler, State of Arizona,* and *Crown Cork & Seal* and the J.P. Morgan Chase Defendants [2] filed the removal papers in *Parrett.* Each notice of removal contained a statement that certain other defendants were "consulted" and had no objections to removal. Not all of the defendants were listed as having been consulted.

Plaintiffs in each of the cases filed a motion for remand or abstention within one month after the removal of their case. The only such motion ruled on was in *Crown Cork & Seal,* where the Arizona federal court denied the motion to remand or abstain without prejudice to renewal. The court denied the motion "in light of" a pending motion for consolidation and transfer with the rest of the National Century litigation. *See* Nov. 20, 2003 Minute Order, attached as Ex. A to Consol. Response in Opp'n to Motions for Remand (doc. 110).

The MDL Panel transferred the Arizona actions to this Court for inclusion with the National Century multidistrict litigation. The Panel transferred *City of Chandler* and *Parrett* to this Court on November 13, 2003, *State of Arizona* on December 30, 2003, and *Crown Cork & Seal* on March 19, 2004.

Now that all four Arizona actions are a part of the MDL case, Plaintiffs have renewed their motions for remand or abstention. Two briefs have been filed, the first by the Arizona Noteholder Plaintiffs and the second by Rebecca Parrett. Both briefs offer the same arguments in support of remand or abstention.

Four groups of defendants have filed briefs in opposition to the motions for remand or abstention: (1) Donald and Elise Ayers, and E & D Investments; (2) Bank One, N.A., Bank One Corporation, Banc One Capital Markets, Inc., JP Morgan Chase Bank, J.P. Morgan Chase & Co., JPMorgan Partners, LLC, The Beacon Group, LLC, Deloitte & Touche LLP, Harold W. Pote, Eric R. Wilkinson, Thomas G. Mendell, PricewaterhouseCoopers LLP, and Credit Suisse First Boston, LLC; (3) Lance Poulsen, Barbara Poulsen, and Kuld Corporation; and (4) The Beacon Group III—Focus Value Fund, L.P. These defendants (the "Defendants Opposing Remand") offer the same or similar reasons why the motions for remand or abstention should be denied.

One defendant, Rebecca Parrett, supports the motions for remand. The remainder of the defendants have not weighed in on the matter; however, unresolved service of process issues surround at least some of those defendants.

## II. SUBJECT–MATTER JURISDICTION

The first issue is whether the Court has subject-matter jurisdiction over the Arizona cases. The Defendants Opposing Re-

---

**1.** The Bank One Defendants are Bank One, N.A., Bank One Corporation, and Banc One Capital Markets, Inc.

**2.** The J.P. Morgan Chase Defendants are JP Morgan Chase Bank and J.P. Morgan Chase & Co.

mand assert that the cases are "related to" the National Century Chapter 11 bankruptcy proceedings. A party may remove any civil action that the federal courts have jurisdiction of under § 1334. 28 U.S.C. § 1452(a). Federal district courts have "original and exclusive jurisdiction of all cases under Title 11," and they have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b).

■ Proceedings "related to" a bankruptcy case include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995). The Defendants Opposing Remand believe the Arizona cases fit into this second category.

### A. ASSERTED GROUNDS FOR "RELATED TO" JURISDICTION

■ "The defendant that removes a case from state court bears the burden of establishing federal subject-matter jurisdiction." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999) (citing *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir.1996)). The Defendants Opposing Remand offer several reasons why the Arizona cases are related to the National Century bankruptcy proceedings. First, they point to contractual indemnity rights that certain defendants have against the Debtor, National Century:

- June 1, 1998 Master Indenture, p. 26, § 3.01 (NPF VI, Inc. agreed to indemnify Trustee J.P. Morgan Chase against all losses, claims, suits, judgments, and expenses arising out of any act or omission by NPF VI);

- March 10, 1999 Master Indenture, p. 29, § 3.01 (NPF XII, Inc. agreed to likewise indemnify Trustee Bank One); and

- March 20, 2001 Purchase and Agency Agreement, p. 21, § 10(a) (NPF XII agreed to indemnify Agents Bank One Capital Markets, Inc. and Credit Suisse First Boston Corporation for all losses, claims, and liabilities arising out of a breach or untrue statement by NPF XII).

Defendant Bank One alleges that it and other defendants have filed proofs of claim in the bankruptcy proceedings.

Next, Bank One asserted in its notice of removal that Defendants have common law and statutory rights of indemnification and contribution. *See, e.g., State of Arizona v. Credit Suisse First Boston*, Notice of Removal, ¶¶ 4–5 (citing Ariz Rev. Stat. § 44–2003(I), (M); N.J. Stat. Ann. § 49:3–71(d)).

Defendant Donald Ayers alleges that National Century's bylaws contained an indemnity clause by which the company would indemnify directors and officers for all litigation costs and expenses. *See* National Century Code of Regulations, Art. VI, § 6.01. Lastly, National Century held directors and officers insurance policies issued by Gulf Insurance Company and Great American Insurance Company. It is alleged that the former directors and officers of National Century have notified Gulf and Great American Insurance Company of potential claims under the policies and that, as a result, an adversarial proceeding (*National Century Financial Enterprises, Inc. v. Gulf Ins. Co., et al.*, Adv. Proc. No. 03–2288) was instituted in the bankruptcy court.

### B. APPLICABLE STANDARD

■ In the Sixth Circuit, as in other circuits, the test for determining "related to" jurisdiction is "whether the outcome of

that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir.1996) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). *See, also, Celotex,* 514 U.S. at 307–08, 115 S.Ct. at 1498–99 (citing the *Pacor* standard with approval); *In re G.S.F. Corp.,* 938 F.2d 1467, 1475 (1st Cir. 1991); *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990); *In re Dogpatch, U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987).

For an action to be related to a bankruptcy proceeding, it "need not necessarily be against the debtor or against the debtor's property." *Pacor,* 743 F.2d at 994.. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* Nonetheless, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]." *Id.* Jurisdiction does not exist absent "some nexus between the 'related' civil proceeding and the title 11 case." *Id.; see also In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986) ("[S]ituations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.").

## C. *DISCUSSION*

In arguing that their claims for indemnification and contribution are sufficient to create "related to" jurisdiction, the Defendants Opposing Remand rely on *Dow Corning, supra,* a Sixth Circuit decision squarely in their favor. In *Dow Corning,* thousands of claims were filed against manufacturers and suppliers of silicone breast implants. The Sixth Circuit held that those claims were related to the bankruptcy of Dow Corning Corporation because they could give rise to contingent claims of indemnification and contribution by the nondebtor defendants against Dow Corning. 86 F.3d at 494. "Claims for indemnification and contribution, whether asserted against or by Dow Corning, obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and proceed with reorganization." *Id.* Thus, the "potential for Dow Corning's being held liable to the nondebtors in claims for contribution and indemnification . . . suffices to establish a conceivable impact on the estate in bankruptcy." *Id.*

The Arizona Plaintiffs do not address *Dow Corning* head on. Rather, they rely on the Third Circuit's decision in *Pacor,* to argue that Defendants' potential claims for indemnity and contribution against the Debtor are not sufficient to create "related to" jurisdiction. In *Pacor,* the nondebtor defendant asserted that "related to" jurisdiction existed because of its potential indemnification claims against the bankruptcy estate. The court rejected this argument, holding that the outcome of a lawsuit against a nondebtor could not result "in even a contingent claim" against the debtor because the nondebtor defendant would be required "to bring an entirely separate proceeding to receive indemnification." 743 F.2d at 995.

Though *Dow Corning* and *Pacor* both applied the same "conceivable effect" standard, they reached different results. The Sixth Circuit held that contingent claims for indemnification and contribution created "related to" jurisdiction because "it is not necessary for the [plaintiffs] first to prevail on their claims against the nondebtor defendant, and for those companies to establish joint and several liability on Dow Corning's part." *Dow Corning,* 86

F.3d at 494; *see also Tennessee Consol. Ret. Sys. v. Citigroup, Inc.*, No. 3:03–0128, 2003 WL 22190841, at *2 (M.D.Tenn. May 9, 2003) ("[I]n this Circuit, contingent claims of contribution and indemnification are sufficient to invoke the 'related to' bankruptcy jurisdiction under 28 U.S.C. § 1334(b)."). The Third Circuit, on the other hand, held that such claims were insufficient for jurisdiction if a separate lawsuit had to be brought to obtain indemnification. *Pacor*, 743 F.2d at 995; *see also In re Federal–Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir.2002) ("The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.").

This Court, of course, is bound by the Sixth Circuit's decision in *Dow Corning*.[3] Moreover, *Pacor* is distinguishable because the nondebtor defendant in *Pacor*, unlike some of the Arizona Defendants, did not have a contractual right of indemnity against the debtor in bankruptcy. 743 F.2d at 995 ("Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor."). The Defendants Opposing Remand have made a facial showing that certain of them have contractual indemnity rights, and they have asserted, without contradiction from Plaintiffs, that they filed proofs of claim in the bankruptcy proceedings. Courts have consistently found that "related to" jurisdiction exists under such circumstances. *See, e.g., Belcufine v. Aloe*, 112 F.3d 633, 636–37 (3d Cir.1997) (distinguishing *Pacor* and finding "related to" jurisdiction where nondebtor defendant had contractual in-

demnity claims); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986) (finding jurisdiction over actions against former corporate officers entitled to indemnification under the bankrupt's insurance policy and corporate bylaws); *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997) (finding jurisdiction where nondebtor defendant filed proof of claim against the debtor based on a contractual obligation of indemnity); *In re United Container, LLC*, 284 B.R. 162, 171 (Bkrtcy. S.D. Fla.2002) (same); *Davis v. Life Investors Ins. Co. of Am.*, 282 B.R. 186, 190 (S.D.Miss.2002) (same). *Cf. Coward v. AC and S, Inc.*, 91 Fed.Appx. 919, 923–24 (5th Cir.2004) (noting that the existence of a contractual indemnification agreement between nondebtor defendant and debtor would have created "related to" bankruptcy jurisdiction).

The Arizona Plaintiffs do not deny that the Defendants have contingent claims for indemnification and contribution. Instead, they argue that those claims should be disregarded as "extremely tenuous" because they must be disallowed under 11 U.S.C. § 502(e) and be made subordinate under 11 U.S.C. § 509(c) to any claims of the creditors.

This argument overlooks an important point. The standard for "related to" jurisdiction is whether the outcome of a proceeding could conceivably have any effect on the bankruptcy estate. " '[A]utomatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction.' " *Dow Corning*, 86 F.3d at 491; *see also In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir.1991) ("Although we acknowledge the possibility that the [cur-

---

**3.** The parties have briefed whether Sixth Circuit case law controls in the context of mandatory abstention. *See* Part IV.B.2, *infra*. Plaintiffs contend that Sixth Circuit precedent on mandatory abstention controls, and, for

the reasons stated below, the Court agrees. While Plaintiffs rely on *Pacor* with respect to the issue of subject-matter jurisdiction, they do not argue that it trumps *Dow Corning*.

rent] dispute may ultimately have no effect on the debtor, we cannot conclude that it will have no *conceivable* effect.") (emphasis in original). Whether the Defendants' indemnity claims should be disallowed or made subordinate is a question for another day and another court. As things currently stand, Defendants' indemnity claims could conceivably affect the bankruptcy estate. *See Belcufine v. Aloe,* 112 F.3d 633, 637 (3d Cir.1997) (rejecting same argument made by the Plaintiffs here because the question whether a claim will ultimately be disallowed "is one for none other than the bankruptcy court."); *In re World-Com, Inc. Securities Litig.,* 293 B.R. 308, 323 (S.D.N.Y.2003) (rejecting same argument because "[c]laims that are contingent today nonetheless have a 'conceivable' effect on the bankruptcy.").

The situation might be different if Defendants lacked a reasonable legal basis for their claims for indemnification and contribution. *See Arnold v. Garlock, Inc.,* 278 F.3d 426, 432 (5th Cir.2001) (finding no jurisdiction because there was "no merit" in "scantily asserted and unsupported" claim for contribution); *In re Chateaugay Corp.,* 213 B.R. 633, 640 (S.D.N.Y.1997) (no jurisdiction "in absence of any articulated legal basis for an indemnity action"). But the Defendants Opposing Remand have shown that their claims have a basis in contract, statute, corporate bylaws, and insurance policies. *See WorldCom,* 293 B.R. at 320–21 (holding that claims for indemnification and contribution based on contract, statute, corporate bylaws, and insurance policies had a "reasonable basis"); *In re Masterwear Corp.,* 241 B.R. 511, 516–17 (Bankr.S.D.N.Y.1999) (finding "related to" jurisdiction where corporate bylaws and state statute allowed third party defendants to recover legal fees and expenses from debtor).

The conclusion reached here is strengthened by the interconnection between National Century and the Arizona Defendants. Defendants include former officers and directors of National Century, indenture trustees of National Century's financing programs, National Century's placement agent, its accounting firms, and its law firm. They are named as defendants in the other cases in the MDL as well, and each of them allegedly played a role in the events leading to National Century's financial collapse. *Compare Dow Corning* (finding "related to" jurisdiction where the nondebtor defendants were closely involved in the product made by the debtor) *with Arnold,* 278 F.3d at 440 (finding no jurisdiction where there was no "unity of identity between the debtor and the co-defendants"). In short, Defendants are being sued because of their participation in National Century's alleged wrongdoing. *Cf. In re Farmland Indus., Inc.,* 296 B.R. 793, 806 (8th Cir.BAP (Mo.) 2003) (finding jurisdiction where "[t]he dispute between Safeco and ADM necessarily implicates Debtor since ADM cannot recover from Safeco without establishing that Debtor breached its obligations under the Purchase Agreement").

An analogous situation existed in *World-Com,* where the court found that it had jurisdiction because the conduct of the nondebtor defendants and WorldCom, the debtor, was "indisputably intertwined" and the theories of liability asserted by the plaintiffs were "necessarily interconnected with [the] Defendants' rights to contribution." 293 B.R. at 321.

A finding that either the NYCERS Director or Underwriter Defendants are liable is entirely dependent on a finding that WorldCom engaged in wrongful conduct....

The existence of strong interconnections between the third party action and the bankruptcy has been cited frequently by courts in concluding that the third party

litigation is related to the bankruptcy proceeding. *See, e.g., In re Dow Corning,* 86 F.3d at 492–94; *In re Wolverine Radio Co.,* [930 F.2d 1132, 1143 (6th Cir.1991) ]; *In re Ames Dept. Stores, Inc.,* 190 B.R. 157, 161 (S.D.N.Y.1995). Here, but for WorldCom's bankruptcy, it would have been named as a defendant in the NYCERS action, and despite its absence as a party, its conduct will remain at the heart of the NYCERS litigation. As NYCERS states in its Complaint, "because WorldCom filed for protection under the bankruptcy laws, it is not named as a party defendant in this action . . . ."

*Id.* (footnote omitted).

National Century would be a defendant in the Arizona cases but for its bankruptcy. The factual allegations being made against the Defendants stem from the various roles they played in National Century's operations. If National Century committed no wrong, then Plaintiffs will be hard-pressed to prove their claims against Defendants. This close connection between the Arizona Defendants and National Century supports a finding of "related to" jurisdiction.

In sum, the Court concludes that "related to" bankruptcy jurisdiction exists over the Arizona cases. Defendants' indemnification and contribution claims could conceivably alter the distribution of assets among the estate's creditors. Under *Dow Corning,* this is sufficient to find that the Arizona cases are related to the National Century bankruptcy proceedings. *See also In re Canion,* 196 F.3d 579, 586 (5th Cir.1999) ("[A] claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer 'related to' jurisdiction."); *In re Celotex Corp.,* 124 F.3d 619, 626 (4th Cir.1997) (finding jurisdiction because third-party action could alter the liabilities of the

bankruptcy estate); *Kaonohi Ohana, Ltd. v. Sutherland,* 873 F.2d 1302, 1306–07 (9th Cir.1989) (same); *In re Titan Energy, Inc.,* 837 F.2d 325, 329–30 (8th Cir.1988) (same).

## III. *UNANIMITY*

■ Removal of a case from state court generally requires the unanimous consent of all defendants. *See* 28 U.S.C. § 1441(a); *Loftis v. United Parcel Service, Inc.,* 342 F.3d 509, 516 (6th Cir.2003). Defendants in each of the four Arizona cases did not unanimously consent to removal. The Bank One Defendants removed *City of Chandler, State of Arizona,* and *Crown Cork & Seal,* and the J.P. Morgan Chase Defendants removed *Parrett.* Though some defendants had not been served at the time of removal, *see Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir. 1993) ("[I]t is unnecessary for a removing defendant to obtain the consent of other defendants that have not been served."), many defendants were served but did not join in the removal or file their written consent. Bank One's and J.P. Morgan Chase's statements that they consulted with certain defendants and received no objection to removal do not qualify as consent to removal. *See Hicks v. Emery Worldwide, Inc.,* 254 F.Supp.2d 968, 974 (S.D.Ohio 2003) ("[A]ll properly served defendants must either join in the removal, i.e., by signing the Notice of Removal, or file a formal written consent to the removal."); *Knickerbocker v. Chrysler Corp.,* 728 F.Supp. 460 (E.D.Mich.1990) (statement in Notice of Removal that non-removing defendant "does not object to the removal" was insufficient).

■ The issue here is whether the rule of unanimity applies to the removal of cases related to a bankruptcy proceeding. Bank One and J.P. Morgan Chase re-

moved the Arizona cases under 28 U.S.C. § 1452, which provides in part:

A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

The first court of appeals to address this issue held, without further explanation, "Under the bankruptcy removal statute ... any one party has the right to remove the state court action without the consent of the other parties." *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir.1985). The Second Circuit has recently sided with *Creasy*. In *dicta*, the court noted, "[B]ecause any one 'party' can remove under Section 1452(a), removal under that provision, unlike removal under Section 1441(a), does not require the unanimous consent of the defendants." *California Public Employees' Ret. Systems v. WorldCom, Inc.*, No. 04–0219, 2004 WL 1048203, at *13 (2nd Cir. May 11, 2004) (citing *Creasy*).

Focusing on the plain language of the phrase "a party may remove," a majority of courts addressing the issue have followed *Creasy*. For instance, one court found that "by its plain language, section 28 U.S.C. § 1452 differs from 28 U.S.C. § 1441(a) in that the former permits 'a party' to remove a lawsuit to federal court while the latter permits removal by the 'defendant or defendants' in the case. Accordingly, ... all of the Defendants to this action were not required to join in the notice of removal ...." *Beasley v. Personal Finance Corp.*, 279 B.R. 523, 529 (S.D.Miss.2002). Another court likewise held, "Under section 1452, any defendant has the right to remove a state court action without the consent of the other parties.... The plain language of section 1452

differs from the language of 28 U.S.C. section 1441(a) in that section 1452 permits 'a party' to remove an action from state court." *Sommers v. Abshire*, 186 B.R. 407, 409 (E.D.Tex.1995) (citations removed). *See also Connecticut Resources Recovery Authority v. Lay*, 292 B.R. 464, 471 (D.Conn.2003) ("[C]onsent for removal by all defendants is not required."); *In re Mid–Atlantic Resources Corp.*, 283 B.R. 176, 184 (S.D.W.Va.2002) ("[C]onsent of all the parties is not needed under § 1452(a) for removal of a case ...."); *WorldCom*, 293 B.R. at 330; *In re Asbestos Litig.*, 271 B.R. 118, 120 (S.D.W.Va.2001); *Plowman v. Bedford Fin. Corp.*, 218 B.R. 607, 616 (Bkrtcy.N.D.Ala.1998); *Joe Conte Toyota, Inc. v. Howell*, No. Civ. A. 97–0686, 1997 WL 222410, at *1 (E.D.La. Apr.30, 1997).

A handful of courts have held that the rule of unanimity does apply to cases removed under § 1452. *See Ross v. Thousand Adventures of Iowa, Inc.*, 178 F.Supp.2d 996, 1002 (S.D.Iowa 2001); *Whitney Nat'l Bank v. Bunch*, No. Civ. A. 00–2859, 2001 WL 87443, at *2, n. 9 (E.D.La. Jan.30, 2001); *Hills v. Hernandez*, No. Civ. A. 98–1108, 1998 WL 241518, at *2 (E.D.La. May 12, 1998). The court in *Ross* criticized the majority view as "misplaced" because "Section 1446(a) also states '[a] defendant' can file a notice of removal, yet there is no question that the unanimity rule applies." 178 F.Supp.2d at 1002. The court concluded that § 1452 should be treated no differently than the other removal statutes. "The sections governing removal, 28 U.S.C. §§ 1441–1452, must be read together. The unanimity rule is a strong rule governing notices of removal, and enforcement of the rule allows the plaintiff's choice of forum strong deference.... Any doubt regarding removal is to be resolved in favor of remand." *Id.* (citations removed).

*Ross* is not persuasive. It incorrectly compared § 1452 with § 1446. The proper comparison is between § 1452 (authorizing removal based on bankruptcy jurisdiction) and § 1441 (authorizing removal based on federal question or diversity jurisdiction), not § 1452 and § 1446 (providing the procedure for removal). *See California Public Employees' Ret. System,* 368 F.3d 86, 103–04 (comparing § 1452(a) with § 1441(a)); *Retirement Systems of Alabama v. Merrill Lynch & Co.,* 209 F.Supp.2d 1257, 1263–64 (M.D.Ala.2002) (calling *Ross*'s comparison "unavailing, as § 1446 provides the procedure for removal, whereas § 1441 authorizes removal based on federal question or diversity jurisdiction.").

The plain language and purpose of § 1452 are different than that of § 1441. Section 1441(a) allows "the defendant or the defendants" to remove, but Section 1452(a) allows "a party" to remove. And while any doubts as to the propriety of removal under § 1441 are resolved in favor of remand, *Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999), the jurisdictional grant in the 1984 Bankruptcy Amendments is to be "broadly construed." *Central Vermont Public Service Corp. v. Herbert,* 341 F.3d 186, 191 (2d Cir.2003) (citing *In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 705 (2d Cir. 1995)). "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts ... meant to enlarge, not to rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 131–32, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (Ginsberg, J., concurring). Given § 1452's plain language and the Congressional purpose behind it, this Court concludes that a single defendant may remove a claim or cause of action related to a bankruptcy proceeding. *See Mt. McKinley Ins. Co. v. Corning, Inc.,* No. 02 Civ. 5835 (DLC),

2003 WL 1482786, at *6 (S.D.N.Y. March 21, 2003) ("In order to achieve the aims of the Bankruptcy Code, the plain language of Section 1452 allows a single defendant in a multi-defendant case to remove a claim or cause of action for which there is federal subject matter jurisdiction pursuant to Section 1334.").

Accordingly, the removals of the Arizona cases under § 1452 were not defective.

## IV. *MANDATORY ABSTENTION*

■ A federal district court having jurisdiction of an action related to a bankruptcy proceeding must abstain from exercising jurisdiction under the following conditions:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Thus, mandatory abstention applies when: (1) a timely motion is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is "related to" a bankruptcy case, but did not "arise in" or "arise under" the bankruptcy case; (4) the action could not have been commenced in federal court absent § 1334 jurisdiction; (5) the action is commenced in state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in state court. *See In re Dow Corning Corp.,* 86 F.3d 482, 497 (6th Cir.1996).

## A. *The First Four Requirements*

Of the first four requirements, only the third is at issue. Plaintiffs filed their motions for remand or abstention within one month of removal of their respective cases. *See In re Arkansas Oil & Gas, Inc.*, 210 B.R. 150, 152 (Bankr.E.D.Ark.1997) (finding timely a motion for abstention filed one month after the movant was made a party to the action); *In re Chiodo*, 88 B.R. 780, 785 (W.D.Tex.1988) (same). The causes of action are based exclusively on state law—common law fraud, breach of contract, breach of fiduciary duty, negligence, misrepresentation, and violations of state blue-sky laws. And diversity jurisdiction does not exist because each case has at least one plaintiff and one defendant who are Arizona citizens.[4] *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978) (§ 1332(a) requires complete diversity). Therefore, federal subject-matter jurisdiction does not exist apart from § 1334(b).

■ Turning to the third requirement, mandatory abstention applies to actions "related to" a bankruptcy case, but not to actions that "arise in" or "arise under" a bankruptcy case. In other words, mandatory abstention can apply only to a non-core proceeding. *See Dow Corning*, 86 F.3d at 497. A non-core proceeding "does not invoke a substantive right created by federal bankruptcy law and could exist outside of bankruptcy." *In re Webb*, 227 B.R. 494, 497 (Bankr.S.D.Ohio 1998); *see also Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990). In contrast, a core proceeding "is one that 'arises under' title 11 or 'arises in' a case under title 11." *Webb*, 227 B.R. at 497 (citing *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144 (6th Cir. 1991)). The phrase "arising under title 11" means "those proceedings that involve a cause of action created by or determined by a statutory provision of title 11." *Webb*, 227 B.R. at 497 (citing *Wolverine*, 930 F.2d at 1144). The phrase "arising in" means those proceedings that "by their very nature, could only arise in bankruptcy cases." *Wolverine*, 930 F.2d at 1144.

■ Plaintiffs assert that the Arizona actions are non-core, and the bulk of the Defendants Opposing Remand do not claim otherwise. In fact, a number of Defendants have expressly acknowledged that the actions are non-core. *See, e.g.*, Aug. 21, 2003 Notice of Removal in *State of Arizona*, ¶ 12 ("This Action is a non-core proceeding . . . ."); March 20, 2003 Notice of Removal in *Parrett*, ¶ 6 (same); Credit Suisse First Boston's July 21, 2003 Demand for Jury Trial and Reservation of Rights in *City of Chandler*, ¶ 1 (same).

Defendants Donald Ayers, Elise Ayers, and E & D Investments alone argue that the Arizona actions are core proceedings. According to them, the actions are core because: (1) any recovery the Arizona Noteholder Plaintiffs obtain could reduce the liabilities of the bankruptcy estate, and (2) the Arizona Noteholder Plaintiffs, as creditors of the Debtor, stand to benefit from any recovery the estate obtains through adversary claims.

The argument of the Ayers Defendants misses the mark. Theirs is an argument for why the Arizona actions are related to the National Century bankruptcy proceedings, not for why the Arizona actions are core proceedings. Based on the nature of the claims asserted and the substantive rights invoked, the Court finds that the Arizona actions are non-core. Plaintiffs' claims arise under state law, are asserted

4. Arizona resident Rebecca Parrett is a defendant in all three Arizona Noteholder actions. In Parrett's own action, she names Arizona residents Richard Heuer and Slade Hefner as defendants.

against non-debtor third parties, and do not invoke any substantive bankruptcy rights. The merits of Plaintiffs' claims will be determined without reference to federal bankruptcy law. While "the dependence of the merits of an action on state law ... does not, in and of itself, mean that the action is non-core," *In re Toledo*, 170 F.3d 1340, 1349 (11th Cir.1999), the Arizona cases involve the pre-petition activities of Defendants and do not concern the administration of the estate. *See In re Apex Exp. Corp.*, 190 F.3d 624, 631–32 (4th Cir. 1999) (following majority rule that state law claims arising pre-petition are non-core); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2nd Cir.1993) (same); *Beard v. Braunstein*, 914 F.2d 434, 444–445 (3rd Cir.1990) (same); *Walker v. Commercial Credit Corp.*, 192 B.R. 260, 267 (M.D.Ala. 1996) ("When a debtor's claim involves rights independent of and antecedent to the bankruptcy petition, and is not integral to the restructuring of debtor-creditor rights, then the matter is not a 'core-proceeding.' ").

## B. The Fifth Requirement—Action is Commenced in a State Forum of Appropriate Jurisdiction

### 1. Split in Authority

Section 1334(c)(2) also requires that "an action is commenced ... in a State forum of appropriate jurisdiction." Courts disagree on whether mandatory abstention applies to cases removed under § 1452(a).

A minority of courts, namely the Ninth Circuit and the Southern District of New York, hold that § 1334(c)(2) does not apply to a case removed from state court. *See In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001); *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1009–10 (9th Cir.1997); *In re 666 Assocs.*, 57 B.R. 8, 12 (Bankr.S.D.N.Y.1985). In their view, "[a]bstention can exist only where there is a parallel proceeding in state court. That

is, inherent in the concept of abstention is the presence of a pend[e]nt state action in favor of which the federal court must, or may, abstain." *Security Farms*, 124 F.3d at 1009; *see also In re Lazar*, 237 F.3d at 981. According to these courts, § 1334(c)(2) requires "that a proceeding be pending in state court and, where there is but one state court proceeding at issue, that proceeding is no longer pending in state court upon removal." *Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 12 (S.D.N.Y.2002); *see also In re River Ctr. Holdings, LLC*, 288 B.R. 59, 67–68 (Bankr.S.D.N.Y.2003). This requirement brings § 1334(c)(2) into harmony with § 1452(b), the minority side concludes:

> To require a pend[e]nt state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b), which provides district courts with the authority to remand civil actions properly removed to federal court, in situations where there is no parallel proceeding. Section 1334(c) abstention should be read in *pari materia* with section 1452(b) remand, so that the former applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2).

*Security Farms*, 124 F.3d at 1010.

The "vast majority" of courts disagree with the Ninth Circuit and hold that mandatory abstention does apply to actions removed under § 1452(a). *In re Southmark Corp.*, 163 F.3d 925, 929 (5th Cir. 1999). This includes the three other Courts of Appeal to have addressed the issue: the Sixth, Fifth, and Eleventh Circuits. *See Robinson v. Mich. Consol. Gas Co. Inc.*, 918 F.2d 579, 584 n. 3 (6th Cir. 1990) ("The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a

case has been removed pursuant to 28 U.S.C. § 1452."); *Southmark*, 163 F.3d at 929 ("[W]e note, only to reject out of hand, Coopers' assertion that statutory abstention does not apply to cases removed to federal court on the basis of bankruptcy jurisdiction."); *Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir.2000) (holding that " § 1334(c)(2) applies to state law claims that have been removed to federal court under § 1452(a)").[5] The Sixth Circuit reaffirmed its position in an unpublished opinion. *See XL Sports, Ltd. v. Lawler*, No. 01–5363, 2002 WL 31260355, at *6 n. 6 (6th Cir. Oct.8, 2002) (citing *Robinson* ).

The majority view emphasizes that the text of § 1334(c)(2) requires only that an action is "commenced" in a state forum, not that one is "pending." *See Southmark*, 163 F.3d at 929 (finding "no textual support in the statute" for the requirement of a parallel proceeding in state court); *Christo*, 223 F.3d at 1331 ("[The Fifth Circuit's] interpretation better comports with the plain language of § 1334(c)(2) ...."); *In re Midgard Corp.*, 204 B.R. 764, 774 (10th Cir.B.A.P.1997) ("Section 1334(c)(2) does not require the existence of two proceedings."). Further, the majority view rejects the notion of tension existing between § 1334(c)(2) and § 1452(b):

> [W]hile section 1334(c) does not state the procedural implications of abstaining from hearing a case, it does not prohibit a federal court from remanding a case to a state court if it finds it necessary to abstain under section 1334(c)(2). Indeed, there is nothing in section 1334(c)(2) that either supports or rejects the conclusion (of the minority) that the appropriate procedure is dismissal or stay of the federal action.

*Midgard*, 204 B.R. at 774.

### 2. *Sixth Circuit Precedent Controls*

 The parties disagree about whether this Court should apply Sixth Circuit or Ninth Circuit case law in deciding whether mandatory abstention applies to cases removed under § 1452(a). "Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C.Cir.1987). Thus, the rule in multidistrict litigation is that the transferee court, in interpreting federal law, should apply the law of its own circuit rather than the law of the transferor court's circuit. *See id.* ("[T]he law of a transferor forum on a federal question ... merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit."); *In re TMJ Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir.1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."). *See also Newton v. Thomason*, 22 F.3d 1455, 1460

---

**5.** Other courts joining the majority include: *Barge v. Western Southern Life Ins. Co.*, 307 B.R. 541, 546 (S.D.W.Va.2004); *Transamerica Financial Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 302 B.R. 620, 628 (N.D.Iowa 2003); *In re Robertson*, 140 F.Supp.2d 1274, 1277–78 (M.D.Ala.2001); *Thomas v. R.J. Reynolds Tobacco Co.*, 259 B.R. 571, 576 n. 5 (S.D.Miss. 2001); *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.*, 181 B.R. 781, 788 n. 2 (D.N.J.1995); *Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 869 n. 7 (N.D.Ill.1991); *In re Marshall*, 118 B.R. 954, 964–65 (W.D.Mich.1990); *In re Revco D.S., Inc.*, 99 B.R. 768, 773–74 (N.D.Ohio 1989); *Technology Outsource Solutions, LLC v. ENI Technology, Inc.*, No. 02–CV–6433 CJS(F), 2003 WL 252141, at *3 (W.D.N.Y. Jan.23, 2003). *See also Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 380–81 (Bankr. E.D.Ark.2003); *In re Fitzgeralds Gaming Corp.*, 261 B.R. 1, 8–9 (Bankr.W.D.Mo.2001); *In re Best Reception Systems, Inc.*, 220 B.R. 932, 952 (Bankr.E.D.Tenn.1998); *Dunkirk Ltd. Partnership v. TJX Cos.*, 139 B.R. 643, 645 (N.D.Ohio 1992).

(9th Cir.1994); *Menowitz v. Brown,* 991 F.2d 36, 40–41 (2nd Cir.1993); *In re Cardizem CD Antitrust Litig.,* 90 F.Supp.2d 819, 823 (E.D.Mich.1999) ("In multidistrict litigation such as this, the binding precedent, if any, from the Sixth Circuit should be examined and, if none exists, an evaluation of other circuit law should be undertaken in order to make a reasoned decision.") (internal quotation marks omitted).

The Defendants Opposing Remand argue that the rule of *Korean Air Lines* is merely a "preference" in the Sixth Circuit. They cite to a footnote in which the Sixth Circuit stated:

> [A]lthough it is clear ... that in a federal multidistrict litigation there is a preference for applying the law of the transferee district, *see In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 97 F.3d 1050 (8th Cir.1996); *Menowitz v. Brown,* 991 F.2d 36 (2d Cir.1993), it is not clear that precedent "unique" to a particular circuit and arguably divergent from the predominant interpretation of a federal law, such as the Sixth Circuit's "necessary predicate" gloss on the antitrust injury doctrine, should be applied to state antitrust laws or federal antitrust claims that originated in other circuits, *see In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171 (D.C.Cir. 1987).

*In re Cardizem CD Antitrust Litig.,* 332 F.3d 896, 912 n. 17 (6th Cir.2003). Defendants believe this Court should give close consideration to the Ninth Circuit's approach to mandatory abstention.

 The footnote in *Cardizem CD* suggests that a transferee district court in a multidistrict litigation case may stray from otherwise binding precedent if that precedent is "unique" to the circuit in which the court sits and is "arguably divergent from the predominant interpretation." The Sixth Circuit's holding in *Robinson*—that

mandatory abstention applies to cases removed under § 1452—falls in the clear majority of cases. It is the Ninth Circuit which diverges from the predominant interpretation. Thus, Sixth Circuit precedent on mandatory abstention controls in this case.

Of course, courts have "an obligation to engage independently in reasoned analysis." *Korean Air Lines,* 829 F.2d at 1176. Accepting the invitation of the Defendants Opposing Remand to give close consideration to the Ninth Circuit's position, this Court nonetheless concludes that the majority view is correct. Section 1334(c)(2) requires only that a state action is "commenced," not that one is "pending." The Ninth Circuit's requirement of a pendent state action departs from the text of § 1334(c)(2). *See Frelin v. Oakwood Homes Corp.,* 292 B.R. 369, 380–81 (Bankr. E.D.Ark.2003) ("This Court rejects the Ninth Circuit's position because it is not supported by the text of § 1334(c)(2) which does not require that an action be currently *pending* in State court, but only that an action have been *commenced* in State court and can timely be adjudicated there.") (emphasis in original).

Further, the minority's position is undercut by the general principal that district courts have the authority, in appropriate circumstances, to remand the cases from which they abstain. The minority view concludes that abstention must result in the case either being dismissed or stayed; § 1452(b) is the only means to remand a case removed under § 1452(a). But this conclusion is faulty. *See Midgard,* 204 B.R. at 774 n. 12 (criticizing the minority's conclusion). "[F]ederal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or

remanding it to state court." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 1723, 135 L.Ed.2d 1 (1996). As the Second Circuit put it, "[I]f a district court has the power to dismiss an action on grounds of abstention it has the power to remand to the state court on those grounds." *Corcoran v. Ardra Ins. Co., Ltd.,* 842 F.2d 31, 36 (2d Cir.1988). *See also Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1501–02 (8th Cir.1992); *Dykhouse v. Corporate Risk Management Corp.,* No. 91–1646, 1992 WL 97952, at *3 (6th Cir. May 8, 1992).

That § 1334(c)(2) does not specifically authorize a district court to remand a case does not mean the court must either stay or dismiss it. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 354, 108 S.Ct. 614, 621, 98 L.Ed.2d 720 (1988) ("Given that Congress' silence in the removal statute does not negate the power to dismiss such cases, that silence cannot sensibly be read to negate the power to remand them."). Congress has specifically authorized district courts to remand, "on any equitable ground, a case removed to federal court pursuant to § 1452(a)." 28 U.S.C. § 1452(b). One equitable ground on which a court may order remand is a finding that mandatory abstention is required. *See Midgard,* 204 B.R. at 775 ("If abstention is required under section 1334(c)(2), a court may remand the proceeding to state court under 28 U.S.C. § 1452(b) ...."); *In re Marshall,* 118 B.R. 954, 967 (W.D.Mich. 1990); *In re Revco D.S., Inc.,* 99 B.R. 768, 776 (N.D.Ohio 1989); *In re Chiodo,* 88 B.R. 780, 785 (W.D.Tex.1988).

Accordingly, the Court concludes that the mandatory abstention rule of § 1334(c)(2) applies to cases removed under § 1452(a).

### 3. *Arizona is a Forum of "Appropriate Jurisdiction"*

 The Arizona actions were all commenced in the Superior Court of Maricopa County, Arizona. The Defendants Opposing Remand argue that the Arizona state court is not a forum of "appropriate jurisdiction" because it lacks personal jurisdiction over some of the Defendants.[6] Plaintiffs respond that the phrase "appropriate jurisdiction" refers strictly to subject-matter jurisdiction and that no authority exists for adding a personal jurisdiction requirement to § 1334(c)(2).

The meaning of the phrase "a State forum of appropriate jurisdiction" is not immediately obvious. "Jurisdiction," the Supreme Court has observed, "is a word of many, too many, meanings." *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks omitted). "The term 'jurisdiction' is notoriously malleable and is used in a variety of contexts ... that have nothing whatever to do with the court's subject-matter jurisdiction." *United States v. Gonzalez,* 311 F.3d 440, 442–43 (1st Cir.2002). General use of the word frequently "subsume[s] the questions of subject-matter jurisdiction, personal jurisdiction, sufficiency of service, and venue." *Japan Gas Lighter Ass'n v. Ronson Corp.,* 257 F.Supp. 219, 225 n. 1 (D.N.J.1966). *See also Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n,* 781 F.2d 935, 945, n. 4 (D.C.Cir.1986) (Ginsburg, J., dissenting) (noting the "profligate use" of the word "jurisdiction").

Because the phrase "appropriate jurisdiction" is ambiguous, the Court must read the statute as a whole to determine its meaning. *See Stafford v. Briggs,* 444 U.S.

---

**6.** A number of Defendants have separately filed motions to dismiss for lack of personal jurisdiction.

527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980) (" '[I]n interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law....' ") (quoting *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1856)). Section 1334 appears in a statutory chapter that is concerned with subject-matter jurisdiction. The provisions of Chapter 85 of Title 28 grant federal district courts the authority to hear various types of cases, including those having a federal question, diversity of citizenship, and the United States as a party. 28 U.S.C. §§ 1330–1369.

Section 1334 itself is a statute concerned with subject-matter jurisdiction. "Subject-matter jurisdiction defines the court's authority to hear a given type of case," *U.S. v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984), and that is what § 1334 does. It uses the word "jurisdiction" in providing federal district courts with "original and exclusive jurisdiction of all cases under title 11" and with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). *See also In re Jones,* 134 B.R. 274, 281 (N.D.Ill.1991) ("Section 1334 addresses the district courts' subject-matter jurisdiction."); *In re Fitzgeralds Gaming Corp.,* 261 B.R. 1, 4 (Bankr. W.D.Mo.2001) ("Section 1334 of the United States Code confers subject-matter jurisdiction on the district court for bankruptcy cases and proceedings.").

Consistent with its use of the word in subsections (a) and (b), Congress used "jurisdiction" again in § 1334(c)(2) to refer to subject-matter jurisdiction. The fourth requirement for mandatory abstention is that the "action could not have been commenced in a court of the United States absent jurisdiction under this section." 28 U.S.C. § 1334(c)(2). Courts have uniformly read this clause to mean that the party opposing mandatory abstention "must present an independent basis for federal subject-matter jurisdiction." *Robinson v. Mich. Consol. Gas Co. Inc.,* 918 F.2d 579, 584 (6th Cir.1990); *see also In re AHT Corp.,* 265 B.R. 379, 384 (Bankr.S.D.N.Y. 2001) ("Stated differently, there must be no basis for Federal subject-matter jurisdiction ... other than that conferred under Section 1334."); *In re Ward,* No. 98–42162, 1999 WL 33581614, at *2 (Bankr. S.D.Ga. Aug.16, 1999) (§ 1334(c)(2) requires that "federal subject-matter jurisdiction does not exist apart from bankruptcy jurisdiction").

Reading § 1334 as a whole leads the Court to conclude that the phrase "a State forum of appropriate jurisdiction" means a state forum which has subject-matter jurisdiction, not one which has both subject-matter and personal jurisdiction. The Defendants Opposing Remand cite no authority for why Congress would use "jurisdiction" to mean something different in that phrase than it means in the rest of § 1334. Putting § 1334(c)(2)'s fourth and fifth requirements into context, mandatory abstention does not apply unless the federal district court lacks subject-matter jurisdiction, absent § 1334(b), but the state court has it. Defendants' attempt to add a personal jurisdiction requirement into the mix does not work. *Cf. United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984) (relying on the statutory context of 42 U.S.C. § 659(f) in holding that its use of the phrase "competent jurisdiction" refers only to subject-matter jurisdiction, not personal jurisdiction); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444–445, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946) (construing use of "jurisdiction" in Rule 82, Fed.R.Civ. P., as referring to subject-matter jurisdic-

tion only); *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir.1971) (relying on statutory context in finding that use of "jurisdiction" in Rule 8(a), Fed. R.Civ.P., "refers to subject-matter rather than personal jurisdiction").

Challenges to personal jurisdiction are common in cases, like the ones here, having numerous defendants who live in various states throughout the country. According to the Defendants Opposing Remand, whenever such a case is removed to federal court and becomes the subject of a motion for mandatory abstention under § 1334(c)(2), the federal court will have to evaluate whether the state court has personal jurisdiction over the defendants. Two problems belie Defendants' position. First, a challenge to personal jurisdiction is more appropriately raised through a motion to dismiss. Second, the statute gives no guidance as to when a state court would lack "appropriate jurisdiction" (using Defendants' meaning of the words) in a multi-defendant case: would it be when the state court lacks personal jurisdiction over just one defendant, a majority of defendants, or every defendant? The Defendants Opposing Remand believe that a state court ceases to have appropriate jurisdiction if it lacks personal jurisdiction over at least a handful of defendants. Section 1334(c)(2) cannot bear this interpretation. Even if all of the defendants who have challenged personal jurisdiction were dismissed from the Arizona cases, some defendants would remain. The Arizona state court would therefore have appropriate jurisdiction of the cases against the remaining defendants in any event. Simply put, Defendants' argument for inserting a personal jurisdiction requirement in § 1334(c)(2) does not make sense.

The Court concludes that for a state court to be one of "appropriate jurisdic-

tion," it need only have subject-matter jurisdiction. The Superior Court of Maricopa County, Arizona indisputably has subject-matter jurisdiction of the four Arizona actions. "[T]he superior courts are courts of general jurisdiction." *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 273, 872 P.2d 668, 677 (Ariz.1994); *see also* Ariz. Const. Art. 6, § 14 (empowering superior courts with general jurisdiction); *Federal Home Loan Bank Bd. v. Superior Court*, 494 F.Supp. 924, 926 (D.Ariz.1980) ("Superior Court is the court of general jurisdiction in the State of Arizona."). Thus, the fifth requirement of § 1334(c)(2) is satisfied.

## C. *The Sixth Requirement—Timely Adjudication*

### 1. *Burden of Proof*

■ The sixth requirement for mandatory abstention is that the action "can be timely adjudicated" in state court. 28 U.S.C. § 1334(c)(2). The parties disagree on the burden of proof for this requirement. According to the Defendants Opposing Remand, the party moving for abstention has the burden to demonstrate that the state court can timely adjudicate the matter. *See In re Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. 768, 779 (Bankr.S.D.Ohio 1991) ("[I]t is required that a party requesting abstention present evidence demonstrating that the state court action can be timely adjudicated.") (citing cases). According to Plaintiffs, a federal court should presume that a state court can timely adjudicate an action removed from state court. *See Abadie v. Poppin*, 154 B.R. 86, 90 (N.D.Cal.1993) ("While an affirmative showing of the possibility of timely adjudication in state court may be necessary where a movant seeks abstention from a proceeding originating in federal court, such a showing is not

necessary where the movant is contesting the removal of his own state action.").

Plaintiffs argue that the Defendants' position reverses·the "general rule that the party seeking to litigate in a federal forum must first establish that right." *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 180 (Bankr.E.D.N.Y.1986)˙. However, the Defendants Opposing Remand have already established that "related to" jurisdiction exists under § 1334(b); the Court did not excuse them of this burden. With subject-matter jurisdiction established, this Court has a "virtually unflagging obligation ... to exercise the jurisdiction given [it]." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821, 96 S.Ct. 1236, 1248, 47 L.Ed.2d 483 (1976). Only if the statutory requirements of § 1334(c)(2) are met must the Court abstain from exercising jurisdiction.

The party seeking mandatory abstention bears the burden of demonstrating that each of the requirements are satisfied. *See In re Asousa Partnership*, 264 B.R. 376, 382 (Bankr.E.D.Pa.2001); *In re Pinnacle Corporation*, 237 B.R. 240, 242 (Bankr.D.Conn.1999); *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 769 (Bankr. N.D.Ill.1993). The cases cited by Plaintiffs—for the proposition that a state court's ability to timely adjudicate a case should be presumed—are distinguishable because the defendants in those cases did not seriously dispute that the state court could timely adjudicate the case. *See XL Sports, Ltd. v. Lawler*, 49 Fed.Appx. 13, 20 (6th Cir.2002) ("Nothing in the record indicates that the Tennessee courts would not adjudicate the claim in a timely fashion ...."); *French v. Fisher*, 290 B.R. 313, 318 (N.D.Ohio 2003) ("[T]he parties have set forth no reason why the matter is incapable of timely adjudication in [state] court."). In contrast, the Defendants Opposing Remand have legitimately contested the Arizona state court's ability to

timely adjudicate the cases. With the Defendants having put forth viable arguments to support their position, the Court cannot allow Plaintiffs to prevail on·the matter without responding to what Defendants have to say.

Certainly, state courts are as capable as federal courts to determine facts, interpret the law, and protect rights. *See Allee v. Medrano*, 416 U.S. 802, 835, 94 S.Ct. 2191, 2210, 40 L.Ed.2d 566 (1974); *State of Ohio v. Wright*, 992 F.2d 616, 620 (6th Cir.1993); *Barichello v. McDonald*, 98 F.3d 948, 954–55 (7th Cir.1996). But when a party legitimately contests the state court's ability to timely adjudicate a case, the federal court must honestly assess whether the state court can. *See Francis v. Henderson*, 425 U.S. 536, 547, 96 S.Ct. 1708, 1714, 48 L.Ed.2d 149 (1976) (Brennan, J., dissenting) (noting a court's " 'institutional duty' to develop and explicate the law in a reasoned and consistent manner ... and honestly ˙state the reasons"). Accordingly, "[t]he burden of proving timely adjudication is on the party seeking˙ abstention." *In re Midgard Corp.*, 204 B.R. 764, 778 (10th Cir.B.A.P.1997) (citing cases).

### 2. *Discussion*

█ Plaintiffs argue that the focus of the timely adjudication requirement should be on the effect that allowing the action to proceed in state court will have on the related bankruptcy case. This argument has case law support, as one court noted, "The phrase 'timely adjudication' is . not defined in the Bankruptcy Code. Courts interpreting this phrase have focused on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." *Midgard*, 204 B.R. at 778 (citing cases); *see also In re United Container, LLC*, 284 B.R. 162, 174 (Bkrtcy.S.D.Fla. 2002); *In re Premier Hotel Dev. Group*,

270 B.R. 243, 254–55 (Bkrtcy.E.D.Tenn. 2001). The court in *Midgard* then laid out factors to consider in making this determination:

(1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case.

*Midgard*, 204 B.R. at 778–79 (footnotes omitted). The court also noted that "in a chapter 7 case or a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant." *Id.*, at 779. The timely adjudication requirement will more likely present an obstacle if the bankruptcy case involves an ongoing Chapter 11 reorganization. *Id.*

Plaintiffs argue that proceeding with the Arizona actions in state court will not hinder the administration of the National Century bankruptcy case because the bankruptcy is a Chapter 11 liquidation proceeding. They also point out that the parties to the Arizona action made a jury demand and have not consented to the bankruptcy court entering judgment in their cases.

The Defendants Opposing Remand respond that Plaintiffs have overlooked the disruptive effect that remanding the Arizona actions will have on the administration of the National Century MDL. They cite four cases in support of their argument that a court handling a MDL case should consider, when reviewing a motion for mandatory abstention, the disruptive effect remand could have on the MDL. *See In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308 (S.D.N.Y.2003); *Connecticut Resources Recovery Authority v. Lay*, 292 B.R. 464 (D.Conn.2003); *In re Global Crossing, Ltd. Securities Litig.*, No. 02 Civ. 910 GEL, 2003 WL 21507466 (S.D.N.Y. June 30, 2003); *In re Enron Corp. Securities, Derivative & ERISA Litig.*, No. G–02–0299, 2002 WL 32107216 (S.D.Tex. Aug.12, 2002).

*WorldCom* and *Enron* both share similarities with the National Century litigation before this Court. They are multidistrict litigation cases involving once-mighty companies whose financial collapses gave rise to numerous civil actions against their former officers and directors, as well as other persons and entities associated with the companies. Motions for mandatory abstention were denied in both cases because the timely adjudication requirement was not satisfied.

The court in *WorldCom* found that the complexity of the MDL case weighed strongly against mandatory abstention:

The size of the WorldCom bankruptcy, the close connections between the defendants in this action and the debtor, and the complexity of this litigation suggest [that] remanding to state court could slow the pace of litigation dramatically. If each of the actions removed from state court were remanded, it would lead to duplicative motion practice and repetitious discovery, as well as requiring common issues to be resolved separately by courts across the country. [Plaintiff] has not shown that its case could be both fairly and timely adjudicated by a state court in such circumstances.

*WorldCom*, 293 B.R. at 331. The court in *Enron* reached a similar conclusion:

The transactions challenged in this suit are very complicated, highly sophisticated, and interrelated with numerous oth-

er parties named and issues raised in MDL–1446, which this Court has been presiding over for some time.... [The] state court [has] had minimal, if any, opportunity to review the substantive claims or become familiar with the law, while this Court has been involved in the substantive claims since early this year.... Thus there is a serious question whether this case could be adjudicated in a timely fashion in state court. *Enron*, 2002 WL 32107216, at *9. *See also Connecticut Resources*, 292 B.R. at 472 (denying motion for mandatory abstention because of "the size and complexity of the litigation, and the judicial inefficiency of litigating common issues in courts across the country").

In *Global Crossing*, the court noted that § 1334(c)(2) reflects Congress's intent to entrust state courts with suits which "can be promptly resolved in state court without interfering with proceedings in the federal courts." *Global Crossing*, 2003 WL 21507466, at *4. In light of this, the court concluded that mandatory abstention does not apply to "a case intertwined both with complex bankruptcy proceedings and equally complex securities class action pending in federal court." *Id.* Remanding such a case would create "the pendency of multiple proceedings in multiple jurisdictions [and] contribute to slowing down the resolution" of the litigation. *Id.* at *3.

The Court finds the cases cited by the Defendants Opposing Remand persuasive. The point made in *Global Crossing* applies with equal force here. The Arizona cases are intertwined with complex bankruptcy proceedings and complex multidistrict securities litigation. *See* Tr. of Apr. 8, 2004 Bankruptcy Hearing, p. 64 (Calhoun, J., commenting that "National Century never ceases to surprise me with the uniqueness and complexity of the issues that can arise from whatever angle"). Remanding the Arizona cases would disrupt the orderly administration of the National Century MDL. The Court has gained familiarity with the complex factual and legal issues involved in the MDL. The state court, in contrast, only had the Arizona cases for less than one month each. The MDL Panel emphasized the benefit of "placing all actions in this docket before a single judge who can structure pretrial proceedings." This prevents duplicative discovery and inconsistent pretrial rulings, and it conserves the parties' and the judiciary's resources. Moreover, by not remanding the Arizona cases, the Court avoids the possibility of needing to stay discovery in the state court under the Securities Litigation Reform Act. *See* 15 U.S.C. § 78u–4(b)(3)(d) (authorizing federal courts to "stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments"); *see also Enron*, 2002 WL 32107216, at *9 ( [G]iven the necessity of orderly proceedings in such a massive litigation, this Court, in aid of its jurisdiction, has had to enjoin state court cases from discovery that would interfere with that schedule.").

The Court acknowledges that the bankruptcy court confirmed a joint plan of liquidation on April 16, 2004. Even so, the bankruptcy proceedings will continue to have close ties to the National Century MDL. The confirmation plan created three liquidation trusts, one of which will hold proceeds from a series of lawsuits expected to be filed by National Century's estate against many of the same parties who are defendants in the MDL. These expected proceedings in the bankruptcy case, along with the various actions in the National Century MDL, are all part of an effort by creditors to recover their losses. Though *Midgard* is not irrelevant, the factors can play out differently when the motion for mandatory abstention concerns an action in a multidistrict litigation case which is

interconnected with complex bankruptcy proceedings.

Plaintiffs make two arguments in response to *WorldCom* and *Enron*. First, they argue that a court should not factor judicial economy into its mandatory abstention analysis; rather, judicial economy should be saved for discretionary abstention. The Court disagrees. Congress used the words "timely adjudicated" in § 1334(c)(2). The concept of timeliness implies that the court should take judicial economy into consideration. *See Midgard,* 204 B.R. at 779 ("[T]imeliness is relative."); *Caperton v. A.T. Massey Coal Co., Inc.,* 270 B.R. 654, 657 (S.D.W.Va.2001); *In re Pinnacle Corp.,* 237 B.R. 240, 244 (Bankr. D.Conn.1999); *In re World Solar Corp.,* 81 B.R. 603, 612 (Bankr.S.D.Cal.1988). *Midgard* itself makes judicial economy a key consideration. *See Midgard,* 204 B.R. at 778 (focusing on whether remand will disrupt the administration of the bankruptcy case").

Second, Plaintiffs attempt to distinguish themselves from their counterparts in *WorldCom* and *Enron* by affirmatively showing that the Arizona state court can timely adjudicate their cases. *See WorldCom,* 293 B.R. at 331 (rejecting plaintiffs' "naked assertion" that the action could be timely adjudicated in state court); *Enron,* 2002 WL 32107216, at *9 (finding that the plaintiffs "conclusorily asserted, but failed to show" that the action could be timely adjudicated in state court). Maricopa County has a "Complex Civil Litigation Court" for the purpose of "accelerat[ing] the time-to-disposition of complex civil disputes." *See* Arizona Noteholder Pls.' Mot. for Remand, Ex. 4 (Administrative Order No.2002–127 of the Superior Court of Maricopa County, Arizona). Two of the Arizona cases were transferred to the Complex Civil Litigation Court before removal. Though lacking specific statistics about the Complex Civil Litigation Court, Plaintiffs cite the favorable approval ratings each one of the court's three judges received from a commission on judicial performance. Plaintiffs also cite statistics relating to the Superior Court of Maricopa County in general. For example, civil cases in the Superior Court have a median time from filing to trial of 19 months, and over 95% of civil cases currently pending are less than four years old.

Plaintiffs' evidence falls far short of proving that remand will improve the Arizona cases' odds of being timely adjudicated. As the Defendants Opposing Remand point out, the Complex Civil Litigation Court is a "pilot program." *See* Feb. 6, 2004 Decl. of Christopher A. LaVoy, Ex. B, p. 14 (2002 Report of the Arizona Judicial Branch calling the Complex Civil Litigation Court a "pilot program"). The program began in 2002, and there are no statistics available concerning the court's caseload and disposition of cases. The three judges who sit on the court maintain a regular civil docket in Superior Court, where they each have more than 1000 cases pending. *See id.,* ¶ 4.

The Court concludes that the "timely adjudication" requirement of § 1334(c)(2) is not satisfied. Accordingly, the motion for mandatory abstention must be denied.

## V. DISCRETIONARY ABSTENTION AND EQUITABLE REMAND

Plaintiffs lastly argue that this Court should exercise its discretion to abstain under § 1334(c)(1) or to equitably remand the Arizona cases under § 1452(b).

Section 1334(c)(1) provides, "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C.

§ 1334(c)(1). Federal courts may consider numerous factors in deciding whether to abstain from exercising jurisdiction: "1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted 'core' proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and 13) any unusual or other significant factors." *Mann v. Waste Management of Ohio, Inc.*, 253 B.R. 211, 214 (N.D.Ohio 2000); *accord In re Underwood*, 299 B.R. 471, 476 (Bankr.S.D.Ohio 2003); *In re York*, 291 B.R. 806, 816 (Bankr.E.D.Tenn. 2003).

 Section 1452(b) provides, "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Factors to consider in deciding whether to equitably remand a case include: "1) duplicative and uneconomical use of judicial resources in two forums; 2) prejudice to the involuntarily removed parties; 3) forum non conveniens; 4) the state court's ability to handle a suit involving questions of state law; 5) comity considerations; 6) lessened possibility of an inconsistent result; and 7)

the expertise of the court in which the matter was originally pending." *Mann*, 253 B.R. at 214-15; *accord Underwood*, 299 B.R. at 478.

The analysis under § 1334(c)(1) is largely the same as under § 1452(b). *See Mann*, 253 B.R. at 215 ("Permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) are essentially identical."); *In re Donington*, 194 B.R. 750, 759-60 (D.N.J.1996) ("The equitable considerations relevant to determine the appropriateness of equitable remand and permissive abstention ... are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief."). Courts should apply the various factors flexibly, "for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993); *see also Underwood*, 299 B.R. at 476. Judicial economy and fairness always play an important role in the analysis. *See Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No. 03 Civ. 7248 (JGK), 2004 WL 224505, at *8 (S.D.N.Y. Feb.5, 2004) (noting the "[c]ore concerns of efficiency and fairness"). Some courts have held that § 1334(c)(1) should be "narrowly construed" and that "abstention should be exercised sparingly and cautiously." *In re Hillsborough Holdings Corp.*, 123 B.R. 1004, 1010 (Bankr. M.D.Fla.1990); *see also In re B.S. Livingston & Co., Inc.*, 186 B.R. 841, 861 (D.N.J. 1995); *Northern Natural Gas Co. v. Sheerin*, No. SA-03-CA-304-RF, 2003 WL 22594457, at *6 (W.D.Tex. Oct.20, 2003).

 The Court finds that discretionary abstention and equitable remand are not appropriate here. Judicial economy will be best served by this Court exercising the jurisdiction that clearly exists under

§ 1334(b). The MDL Panel consolidated all of the National Century cases to promote efficient administration of the parties' claims. Though the Arizona Plaintiffs assert state law claims only, the plaintiffs in the other cases assert the same or similar claims. Further, the Arizona Plaintiffs make many of the same factual allegations that the rest of plaintiffs make against the same core group of defendants; thus, the parties will need overlapping discovery. *See WorldCom,* 293 B.R. at 333 (denying motion for discretionary abstention or remand because granting it would defeat the purpose for which the MDL Panel consolidated the cases); *Enron,* 2002 WL 32107216, at *10 ("Even though the instant suit is based only upon state law, involves adjudication of rights between nondebtor parties, and is a 'related to' or non-core proceeding, it is intimately related to the other cases consolidated [in the MDL] and will involve overlapping discovery.").

Having the Arizona cases will not burden this Court as much as it would the state court. The Court has gained familiarity with the factual and legal issues presented by the National Century cases. The MDL is moving apace, and numerous substantive motions will soon be ripe for decision. The Arizona Plaintiffs have not identified any particularly difficult issues of state law, and, even if difficult issues do arise, the same issues will likely be present in the other cases in the MDL.

Moreover, the Arizona cases, though non-core, have a close connection to the National Century bankruptcy proceedings. *See In re River Ctr. Holdings, LLC,* 288 B.R. 59, 69–71 (Bankr.S.D.N.Y.2003) (finding that the connection of a case to a bankruptcy proceeding "strongly counsel[ed]" against equitable remand). Defendants allegedly played various roles in the events leading to National Century's financial collapse. It is anticipated that many of the Defendants will be involved in

adversary proceedings filed in the bankruptcy court. *See Renaissance Cosmetics, Inc. v. Development Specialists Inc.,* 277 B.R. 5, 16–17 (S.D.N.Y.2002) (denying motion for discretionary abstention or remand where claims were "inextricably tied" to the bankruptcy proceeding); *B.S. Livingston & Co.,* 186 B.R. at 862 (finding that bankruptcy court correctly denied motion for discretionary abstention because case was "closely linked to the bankruptcy proceedings").

Finally, Plaintiffs will not suffer undue prejudice by having to litigate in this forum. The Court can provide a jury trial. The bankruptcy court also resides in the Southern District of Ohio. Counsel for the Arizona Noteholder Plaintiffs, who also serve as Special Litigation Counsel for the Debtor, are by now accustomed to handling their legal affairs in this district.

**VI. *CONCLUSION***

For the reasons stated above, the Arizona Plaintiffs' motions for remand or abstention (docs. 41, 42) are DENIED. The request of the Defendants Opposing Remand for oral argument is DENIED.